**In re CLUB ASSOCIATES, a Georgia Limited Partnership, Debtor.**

**Bankruptcy No. 87–01356.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 11, 1989.

Order Oct. 31, 1989.

J. William Boone, Alston & Bird, Atlanta, Ga., for Sun Life Assur. Co. of Canada.

Warren O. Wheeler, Schreeder, Wheeler & Flint, Atlanta, Ga., for Transamerica Life Ins. and Annuity Co.

J. Scott Jacobson, Holt, Ney, Zatcoff & Wasserman, Atlanta, Ga., for Vinland Property Trust.

## ORDER

MARGARET H. MURPHY,
Bankruptcy Judge.

This matter is before the court on the motions of Sun Life Assurance Company of Canada (hereinafter "Sun Life") and Transamerica Life Insurance and Annuity Company (hereinafter "Transamerica") for allowance and payment of interim attorneys fees and expenses pursuant to 11 U.S.C. § 506(b). Sun Life filed its application March 17, 1989, seeking compensation of $13,284.00 and $504.90 as reimbursement of expenses. Transamerica filed its application February 1, 1989, seeking compensation of $5,327.00 and $115.87 as reimbursement of expenses. The United States Trustee filed comments with respect to

both applications April 17, 1989 and February 15, 1989 respectively. Consolidated Capital Realty Investors [1] (hereinafter "CCRI") filed objections to the applications April 6, 1989. Following a hearing held May 4, 1989,[2] Transamerica and Sun Life filed a joint brief May 24, 1989.

> Pursuant to 11 U.S.C. § 506(b):
>
> To the extent that an allowed secured claim is secured by property the value of which, after recovery under subsection (c) of this section is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

In the instant case, the agreements under which Sun Life's and Transamerica's claims for attorneys fees arise provide for collection of attorneys fees incurred in connection with a default and in connection with "any action, legal proceeding or dispute ... affecting the indebtedness secured hereby."[3]

In the instant case, Debtor's sole asset is a 652-unit complex operating as the Tahoe Club Apartments in Clarkston, DeKalb County, Georgia (hereinafter the "Property"). Debtor purchased the Property from CCRI November 30, 1984. In connection with the purchase, Club gave CCRI a promissory note in the principal amount of $22 million (hereinafter the "Note"). The Note is a wraparound note, which includes three prior first mortgages,[4] the principal balances of which aggregate approximately $7.8 million. Sun Life and Transamerica are the mortgagees holding two of those first mortgages.

Sun Life's mortgage creates a first priority lien on one parcel of the Property in the original principal amount of $3.45 million maturing March 1, 2002. Sun Life's claim is evidenced by a promissory note between Sun Life and CCRI, to which Club is not a party, which is not and has not been in default.

Transamerica's mortgage creates a first priority lien on one parcel of the Property in the original principal amount of $3 million maturing November 1, 1998. Transamerica's claim is evidenced by a promissory note between Transamerica and CCRI, to which Club is not a party, which is not and has not been in default.

The third first priority mortgage on the Property is held by American Savings Bank in the original principal amount of $2.75 million maturing November 30, 1990. As with the mortgages of Sun Life and Transamerica, the debt to American Savings Bank is evidenced by a promissory note between American Savings Bank and CCRI, to which Club is not a party, which is not and has not been in default.

Under the terms of the original wraparound Note between CCRI and Debtor and under the terms of Debtor's plan of reorganization, confirmed by order entered September 18, 1989, CCRI is responsible for making all payments of principal and interest on the underlying first mortgage notes.

Sun Life and Transamerica seek attorneys fees under § 506(b). Neither § 506(b) nor the clause in the security deeds requires a default in order for Sun Life or Transamerica to be entitled to attorneys fees. Additionally, because the mortgage is not in default, the notice requirements of OCGA § 13-1-11 do not apply in the instant case.

■ In the instant case, however, although the security deeds provide for pay-

---

1. On August 29, 1989, CCRI filed a Notice of Name Change which sets forth that, at a meeting of CCRI's Board of Trustees held April 13, 1989, CCRI's name was changed to "Vinland Property Trust."

2. Although Debtor filed no written objections to the applications of Sun Life and Transamerica, Debtor appeared at the hearing held May 4, 1989, and argued in support of CCRI's objections.

3. Section 1.07 of each of the security deeds.

4. The project was built in three phases and each phase has its own first mortgage. CCRI's wraparound mortgage wraps around all three, and a ground lease, to encompass the entire property.

ment of attorneys fees in connection with "any action, legal proceeding, or dispute," Debtor is not a party to the security deeds.[5] Although the Property is subject to Sun Life's and Transamerica's security interest, the contractual agreement is between CCRI and the mortgagees or their predecessors.[6]

In the case of *Pendergrast v. Ewing*, 158 Ga.App. 5, 279 S.E.2d 233 (1981), the property involved in the case was originally sold by Pendergrast to New London Enterprises, Inc. New London then transferred the property to Harvie Ewing. Thereafter, the original security deed between Pendergrast and New London was modified to a nonrecourse agreement. Mr. Ewing was a party to that modification. Subsequently, Mr. Ewing transferred the property to his wife. Mrs. Ewing took the property subject to the original security deed, as modified, but did not assume the indebtedness secured by that security deed. Thereafter, upon default, Pendergrast accelerated the debt and foreclosed after sending the requisite statutory notice of intention to seek attorneys fees to New London and to Mr. Ewing. Mrs. Ewing was not sent notice. After the property was sold pursuant to the foreclosure, Mrs. Ewing claimed the $53,-000 by which the purchase price exceeded the principal, interest and past due taxes due on the note. Pendergrast claimed entitlement to the $53,000 as attorneys fees. Mrs. Ewing contested that claim because she had not received the statutory notice of intention to seek attorneys fees. The Georgia court held that no individual or entity is personally liable for the attorneys fees provided for in the notes secured by real property where the original maker of the note has been released from personal liability after transferring the property. In *Ewing*, no other individual or entity had assumed the obligation. The court held that the owner of the property who was subject to the note and security deed was not entitled to notice pursuant to the statutory requirements of OCGA 13-1-11.[7]

The requirement in § 506(b) that the agreement provide for collection of attorneys fees evidences an intent of Congress that the creditor must show the parties agreed to the payment of attorneys fees.[8]

5. Section 1.07 of Sun Life's Security Deed and Security Agreement provides:
   GRANTOR will pay or reimburse GRANTEE for all **reasonable** attorney's fees, costs and expenses incurred by GRANTEE in any proceedings involving the estate of a decedent or an insolvent, or in any action, legal proceeding or dispute of any kind in which GRANTEE is made a party, or appears as party plaintiff or defendant, affecting the indebtedness secured hereby, this Deed or the interest created herein, or Premises, including but not limited to the exercise of the power of sale of this Deed, any condemnation action involving Premises or any action to protect the security hereof; and any such amounts paid by GRANTEE shall be added to the indebtedness secured by the lien of this Deed.
   (Emphasis added.)
   Section 1.07 of Transamerica's security deed provides:
   GRANTOR will pay or reimburse GRANTEE for all **reasonable** attorney's fees, costs and expenses incurred by GRANTEE in any legal proceeding or dispute of any kind in in (sic) which GRANTEE is made a party, or appears as party plaintiff or defendant, or otherwise, affecting the indebtedness secured hereby, this Deed or the interest created herein, or Premises, including but not limited to the exercise of the power of sale of this Deed, any condemnation action involving Premises or any action to protect the security hereof; and any such amounts paid by GRANTEE shall be added to the indebtedness secured by the lien of this Deed.
   (Emphasis added.)

6. The contractual agreement upon which Sun Life relies is between predecessors in interest of CCRI and Sun Life. No evidence was presented concerning whether CCRI assumed its predecessor's contractual obligations under that agreement. The contractual agreement upon which Transamerica relies is between CCRI and Transamerica's predecessor.

7. In *Ewing*, the court held the lender could collect contractual attorneys fees from the proceeds of the sale of the property. In the instant case, no default has occurred and sale of the property is not contemplated under the Plan for ten years.

8. The Congressional Record, in describing the reconciliation of earlier House and Senate versions of § 506, sets forth, concerning § 506(b):
   If the security agreement *between the parties* provides for attorneys' fees, it will be enforceable under title 11, notwithstanding contrary law ...
   124 Cong.Rec. H11095 (daily ed. Sept. 28, 1978); S17411 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini.

Interest may be collected without regard to any contractual agreement which might exist. *In re Colegrove,* 771 F.2d 119 (6th Cir, 1985). Attorneys fees and other reasonable fees, costs or charges, however, will be allowed only if provided for in the agreement. *In re D.W.G.K. Restaurants, Inc.,* 84 B.R. 684 (Bankr.S.D.Cal.1988). In the instant case, Debtor was not a party to the agreements with Sun Life and Transamerica, and Debtor never assumed either obligation. Therefore, because neither Sun Life nor Transamerica has satisfied the requirement of § 506(b) concerning an agreement between the parties, they are not entitled to attorneys fees under that provision.

Even if the requirement under § 506(b) with respect to the agreement were satisfied, the reasonableness requirement included in § 506(b) has not been satisfied by Sun Life and Transamerica. As noted above, the posture of the other first priority lender, American Savings Bank, is similar to that of Sun Life and Transamerica. American Savings Bank, however, did not send a legal representative to attend hearings and monitor case development as have Sun Life and Transamerica. Each of the three underlying first mortgagees are substantially oversecured. The order entered September 18, 1989 (hereinafter the "Confirmation Order"), confirming Debtor's plan of reorganization (hereinafter the "Plan"), finds that the value of the Property is $18.75 million.[9] The aggregate principal balance for all three first mortgagees is $7.8 million. Additionally, the proposed treatment of Sun Life and Transamerica in Debtor's Plan impaired Sun Life and Transamerica only by including a provision requiring written notice to Debtor of a de-

fault by CCRI and an opportunity to cure such a default within five days of receipt of such notice. The treatment of American Savings Bank proposed in the Plan included the notice provision contained in the treatment of Sun Life and Transamerica but also included a provision which extended the maturity date of American Savings Bank's note two years, from 1990 to 1992.[10] American Savings Bank, however, evaluated its treatment under the Plan and made its decision to vote in favor of the Plan, apparently without legal assistance, even though it was impaired to a greater degree than either Sun Life or Transamerica.

Given the nature of the wraparound note between Club and CCRI, the absence of default either prepetition or postpetition as to the three first mortgagees, the substantial equity cushion available to all three first mortgagees, and the nature of the Plan's treatment of the debts of Sun Life and Transamerica, Sun Life and Transamerica could, and perhaps should, have followed the example of American Savings Bank and not incurred attorneys fees to monitor a Chapter 11 bankruptcy case in which they were subject to virtually no risk of adverse effect upon their indebtedness.

■ When a party is not otherwise to be entitled to attorneys fees under § 330 or § 506(b), reimbursement for reasonable attorneys fees *quantum meruit* may be appropriate. *See, In re Roberts,* Case No. 82–02339 (Bankr.N.D.Ga., November 27, 1987); *In re Pray,* 37 B.R. 27 (Bankr.M. D.Fla.1983). Neither Sun Life nor Transamerica included a request for fees *quantum meruit* in their original applications for attorneys fees. In the instant case, reimbursement for an expenditure of eight

---

Additionally, the original version of § 506(b) set forth in H.R. 8200 contained a provision that attorneys fees would be allowed only "to the extent collectible under applicable law." The version of § 506(b) which was finally enacted, however, deleted that clause without deleting the required for an agreement, thus indicating Congress' focus on the agreement rather than applicability of state law.

9. CCRI is undersecured and, therefore, has not requested allowance of postpetition interest or attorneys fees.

10. In the Confirmation Order, the modifications to the notes of the three underlying mortgagees, although minor, were found to be improper because the notes were not an obligation of Club and will be retained in the Plan only if CCRI files a certificate of its consent to those provisions. *See,* Confirmation Order, pages 34–35.

hours to evaluate the Debtor's Plan and Disclosure Statement and to complete and file the ballot would not have been excessive. A reasonable hourly rate for an attorney with the level of skill and experience necessary to perform such legal services in the instant case is $125.00. A reasonable and necessary amount to have been expended for expenses is $115.00. Accordingly, Sun Life and Transamerica might each be able to receive, as *quantum meruit* reimbursement of attorneys fees and expenses, an amount equal to no more than $1,115.00. Accordingly, it is hereby

ORDERED that the applications of Sun Life and Transamerica for payment of interim attorneys fees and expenses pursuant to 11 U.S.C. § 506(b) are denied. If either Sun Life or Transamerica desires to seek reimbursement of attorneys fees and expenses *quantum meruit* as described above, it may, within 15 days of the date of entry of this order, file a brief setting forth any legal authority for an award by this court of fees and expenses *quantum meruit*. Any other interested party may file a response or comments within 10 days thereafter.

IT IS SO ORDERED.

### ORDER

This matter is before the court *sua sponte* as a result of an error by the Bankruptcy Clerk's office in serving this court's order entered October 11, 1989 (hereinafter the "Order"). The Order, which addresses the applications of Sun Life Assurance Company of Canada (hereinafter "Sun Life") and Transamerica Life Insurance and Annuity Company (hereinafter "Transamerica") for attorneys fees pursuant to 11 U.S.C. § 506(b), was served only on Debtor, Debtor's attorney and the United States Trustee but was not served on Sun Life, Transamerica or any other party in interest. As a result, Sun Life and Transamerica were not served with the Order before time for filing a notice of appeal expired; accordingly, it is hereby

ORDERED that the Order entered October 11, 1989 is amended upon entry of this order. The Bankruptcy Clerk is directed to serve Sun Life, Transamerica, and Consolidated Capital Realty Investors, in addition to Debtor, Debtor's attorney and the United States Trustee, with a copy of this order and the order entered October 11, 1989.

IT IS SO ORDERED.