### In the Matter of EAST RIDGE ASSOCIATES, LTD., a Georgia Limited Partnership, Debtor.

### Bankruptcy No. A89–04881.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 3, 1991.

---

E. Penn Nicholson, Wendy L. Hagenau, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for Life Ins. Co. of Ga.

John A. Christy, Schreeder, Wheeler & Flint, Atlanta, Ga., for debtor.

Thomas A. Nash, Jr., Inglesby, Falligant, Horne, Courington & Nash, Savannah, Ga., for Great Southern Federal Sav. and Loan Ass'n.

Robert L. Coley, U.S. Trustee's Office, Atlanta, Ga., U.S. Trustee.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter is before the Court on the Application of the Life Insurance Company of Georgia ("Life of Georgia") for Allowance of Attorneys' Fees (hereinafter referred to as the "Application"), filed on May 18, 1990. The United States Trustee's office filed comments concerning the Application on June 6, to which Life of Georgia responded on June 12.[1] Objections to the Application were filed by East Ridge Associates ("Debtor") on June 8 and by Resolution Trust Corporation, the conservator for Great Southern Federal Savings and Loan Association ("Great Southern"), on June 11. A hearing was held on the matter on August 30. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A) (1990). The following constitutes the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

On May 5, 1972, Charles H. Raines, Mildred Anne Raines, W.T. Goodloe Rutland, and Ann M. Rutland (the "Owners"), owners of a parcel of real property in Jefferson County, Alabama ("Parcel One"), signed a promissory note for the benefit of Central Bank and Trust Company in the principal amount of $1,500,000, and they granted a security interest in the property to the bank pursuant to an accompanying mortgage.[2] On June 1, 1973, the Owners executed another mortgage on Parcel One to secure a promissory note to Central Bank of Birmingham for $1,130,000. The two mortgages (the "Central Mortgages") were consolidated and later assigned to Life of Georgia, and on July 1, 1974 the Owners transferred Parcel One to Rutland and Raines Partnership.

On or around November 30, 1983, Rutland and Raines Partnership transferred Parcel One to First Equities Corporation ("First Equities"), a corporation that acquires property for and syndicates limited

1. The United States Trustee requested identification of a party whose initials were found on the fee request documents, and Life of Georgia identified the party in its June 12 response. The United States Trustee also challenged the hourly fee charged by a paralegal employed by Life of Georgia's attorneys, but this Court finds that the $65 per hour fee is commensurate with paralegal fees at comparable law firms and the charge is therefore reasonable.

2. The parties entered a stipulation as to the authenticity of these and all of the agreements described herein on August 13, 1990.

partnerships. On that day First Equities borrowed $1,600,000 from Life of Georgia for the purpose of buying another parcel of real property ("Parcel Two") to be cross-collateralized with Parcel One, and in return First Equities offered a promissory note and mortgage to Life of Georgia (the "Life of Georgia Note" and "Life of Georgia Mortgage"). Pursuant to a Modification of Note and Mortgage (the "Modification Agreement") entered on the same day, Life of Georgia authorized First Equities to transfer both parcels within sixty days and to borrow up to $2,000,000 from a secondary source. First Equities borrowed that amount from Great Southern in return for a wraparound promissory note in the principal amount of $5,901,813.09 (the "Great Southern Note"), which encompassed the outstanding balances on the underlying notes held by Life of Georgia, and an accompanying mortgage (the "Great Southern Mortgage"). Finally, First Equity conveyed the parcels, along with a Warranty Deed, to Debtor subject to the above-described mortgages. The signature of Donald Nichols appears on the Modification Agreement, the Life of Georgia Note and Mortgage, the Great Southern Note and Mortgage, and the Warranty Deed as vice president of First Equity. However, Mr. Nichols also signed the Great Southern Mortgage in his capacity as general partner of First Equities Associates–N, which is the general partner of Debtor.

The end result of this series of transactions was the development of the East Ridge Apartments complex on the two parcels. Debtor later defaulted on its mortgage obligations, however, and on May 8, 1989, it filed a Chapter 11 petition. Life of Georgia now seeks attorneys' fees under certain provisions of the mortgages which encumber the property.[3]

## CONCLUSIONS OF LAW

According to § 506(b) of the Bankruptcy Code,

[t]o the extent that an allowed secured claim is secured by property the value of which … is greater than the amount of such claim, there shall be allowed to the holder of such claim … any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b) (1990). Attorneys' fees can only be recovered under this provision if they are provided for in a contractual agreement, *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684 (Bankr.S.D.Cal.1988). In this case Life of Georgia's claim arose from provisions in the Central Mortgages and the Life of Georgia Mortgage. Debtor was not named as a party to these mortgages, however, and Debtor and Great Southern argue that as a result Debtor is not obligated to pay the fees to Life of Georgia. For support, they cite Judge Murphy's decision in *In re Club Associates*, 107 B.R. 794

3. The Central Mortgages, which were assigned to Life of Georgia and which continue to encumber the property, included the following provision:

8. Mortgagors shall immediately pay to mortgagee all sums, including costs, expenses, and reasonable agent's or attorney's fees, which it may expend or become obligated to pay in any proceedings … to establish or sustain the lien of this mortgage or its priority, or to defend against liens, claims, rights, estates, easements, or restrictions, asserting priority to this mortgage; in payment, settlement, discharge, or release of any asserted lien, claim, right, easement or restriction made upon advice of competent counsel that the same is superior to the lien of this mortgage; … or to recover any sums hereby secured, together with interest on all such sums at the rate of 8½% per annum until paid; and for payment of such sums and interest, this

mortgage shall stand as security in like manner and effect as for the payment of said indebtedness.

Similar provisions are found in the Life of Georgia Mortgage:

8. … [I]f there be commenced any action or proceeding affecting the premises or the title thereto, then Mortgagee, at its option … may appear in any such action or proceeding and retain counsel therein, and take such action as Mortgagee deems advisable, and for any such purposes, Mortgagee may advance such sums of money as it deems necessary …

9. Mortgagor will pay to Mortgagee, immediately and without demand, all sums of money advanced by Mortgagee pursuant to this mortgage, together with interest on each such advancement at the rate of thirteen percent (13%) per annum, and all such sums and interest thereon shall be secured hereby.

(Bankr.N.D.Ga.1989). In that case, a debtor purchased an apartment complex from a realty investor which was subject to two prior mortgages and executed a wraparound note, the principal balance of which incorporated the balance of the prior mortgages; the prior mortgages provided for collection of reasonable attorneys' fees incurred in connection with default, *Id.* at 795. Noting that "[t]he requirement in § 506(b) that the agreement provide for collection of attorneys fees evidences an intent of Congress that the creditor must show the parties agreed to the payment of attorneys fees," *Id.* at 796, Judge Murphy ruled that the mortgagees were not entitled to fees under the agreements because the debtor was not a party to the agreements with the prior mortgagees and therefore never assumed the attorneys' fees obligation, *Id.* at 797.

The purpose of the privity requirement, implies Judge Murphy in *Club Associates,* is to prevent an unwitting stranger to an agreement from being stuck with an obligation for which he or she did not bargain. Debtor was no stranger to the Life of Georgia Mortgage, however. First, Debtor is closely linked to First Equities (who executed the Mortgage) through Donald Nichols, who is both the vice president of First Equities and the general partner of First Equities Associates–N, Debtor's general partner. In fact, Mr. Nichols signed the Mortgage. Second, Debtor was intimately involved in the series of same-day transactions that included the Mortgage.[4] First Equities syndicated Debtor for the purpose of acquiring real property for the development of the East Ridge Apartments, and both the Life of Georgia Mortgage and Debtor's purchase of the parcels from First Equities were integral parts of this larger scheme.

■ The Court must look beyond the face of a contract to the surrounding facts when identifying the true parties to the contract, *Tri–Cities Newspapers, Inc. v. Tri–Cities Pressmen and Assistants Local*

*349,* 427 F.2d 325, 327 (5th Cir.1970). Having done so, the Court concludes that Debtor was a nominal party to the Life of Georgia Mortgage and was therefore obligated by paragraphs 8 and 9 of that mortgage to pay Life of Georgia's attorneys' fees. Moreover, the Court agrees with Life of Georgia that a party should not be able to avoid its attorneys' fees obligation under a mortgage provision simply by transferring the encumbered property to a closely related entity. Accordingly, it is ORDERED that Life of Georgia's Application is GRANTED.

IT IS SO ORDERED.

---

**4.** Of course, the same cannot be said for Debtor's relationship to the Central Mortgages. Those mortgages were executed ten years earlier by parties totally unrelated to either Debtor or Life of Georgia. Accordingly, the Central Mortgages do not create a right to attorneys' fees in this proceeding.