RICHARD W. WILDE, Plaintiff-Appellant, v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF WILMETTE, Defendant-Appellee.

First District (2nd Division)   No. 84—1726

Opinion filed June 28, 1985.

Jay Erens, Keith C. McDole, and Miguel F. Ugarte, all of Levy & Erens, of Chicago, for appellant.

Robert C. Johnson, Robert H. King, Jr., and Steven M. Levy, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

The circuit court sustained defendant's motion to strike plaintiff's complaint and dismiss the action grounded in an alleged breach of an employment contract. Subsequently, the court denied plaintiff's mo-

tion to vacate the dismissal order and for leave to file an amended complaint, which plaintiff identifies as error. We affirm for reasons set forth below.

Plaintiff filed an unverified complaint, consisting of three counts, on March 30, 1983. Count I alleged the facts which follow. Plaintiff entered into an employment contract with Glenview Guaranty Savings and Loan Association (Guaranty), whereby plaintiff would serve as president of Guaranty from January 1, 1982, to December 31, 1984. Pursuant to this contract, plaintiff was entitled to $190,633.32 in severance pay in the event his employment was terminated other than for cause. On or about September 18, 1982, Guaranty and defendant merged under a merger plan "approved by the necessary federal and state regulatory bodies." Upon completion of the merger, defendant "acceeded [*sic*] to all the rights, liabilities and obligations of Guaranty, including the Employment Contract." After the merger, defendant continued to employ plaintiff until he was terminated without cause on or about January 20, 1983. Plaintiff performed all conditions precedent required of him under the contract. Defendant, however, refused to pay him the severance benefits to which he was entitled. Count II, also based on an alleged breach of plaintiff's employment contract, alleged that, when his employment was terminated, plaintiff had not used any of the six weeks' vacation time to which he was entitled under the contract; accordingly, he was due payment for accrued but unused 1983 vacation time equal to $13,892.30. Count III sought a declaratory judgment determining plaintiff's rights with respect to defendant's profit-sharing program. Attached to the complaint as exhibits were plaintiff's employment contract and defendant's letter of termination to plaintiff.

On June 13, 1983, defendant filed a motion to strike the complaint and dismiss the action, accompanied by an affidavit of Jerome Maher, defendant's executive vice president and one of its directors, averring that plaintiff's employment contract never had been presented for approval to nor had it been approved by defendant's board of directors. Subsequently, defendant filed the affidavit of Edward A. Eckert, supervisory agent for the Federal Home Loan Bank Board (Board), attesting that, based upon his personal knowledge, and his participation in the consideration of defendant's application to absorb Guaranty by merger, the ensuing merger of Guaranty and defendant was a "Conditionally Approved Supervisory Merger," and "that the grounds set forth in 12 U.S.C. 1464(d)(6)(A)(i) existed or would exist in the future with respect to Glenview Guaranty in that it was insolvent or was about to become insolvent absent action by the Board. The Board

therefore approved the supervisory merger ***." Defendant also filed a copy of Board resolution No. 82—624, dated September 15, 1982, approving the instant merger.

On February 7, 1984, following a hearing on defendant's motion to strike and dismiss, the circuit court entered an order which: granted defendant's motion to dismiss counts I and II under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619) (Code), but stayed entry of the order for 30 days until March 8, 1984, during which time plaintiff was permitted to file a motion to vacate and therein "demonstrate a new theory upon which the claims in Counts I and II of the complaint could be sustained"; and granted defendant's motion to strike count III under section 2—615 of the Code (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), but granted plaintiff leave to amend within 28 days. On March 8, 1984, the court, among other things, stayed the dismissal as to counts I and II an additional 14 days until March 22, 1984, during which time plaintiff would be permitted to file a motion to vacate and an amended complaint, and dismissed count III of the complaint with prejudice.

On March 22, 1984, plaintiff filed a motion to vacate the dismissal of counts I and II and sought leave to file an unverified amended complaint, appended to the motion. After a hearing, plaintiff's motions were denied. Plaintiff appeals.

I

■■ Federal statutes empower the Board to make rules and regulations respecting "reorganization, consolidation, liquidation, and dissolution of [savings and loan] associations, [and] for the merger of associations" with other institutions. (12 U.S.C. sec. 1464(d)(11) (1982).) By regulation, the Board must approve any merger involving a Federal savings and loan association or a savings and loan association insured by the Federal Savings and Loan Insurance Corporation (FSLIC). (12 C.F.R. sec. 546.2 (1984). See *Federal Home Loan Bank Board v. Elliott* (9th Cir. 1967), 386 F.2d 42, 51.) Employment contracts between covered institutions and their employees may be entered into "only in accordance with the requirements" of these Federal regulations. (12 C.F.R. sec. 563.39(a) (1984).) All such contracts must be in writing, be "approved specifically" by the institution's board of directors, and contain certain provisions, including the following (12 C.F.R. secs. 563.39(a) and (b)(5) (1984)):

> "All obligations under the [employment] contract shall be terminated, except to the extent determined that continuation of the contract is necessary for the continued operation of the in-

stitution *** by the Federal Home Loan Bank Board, at the time the Board or its Principal Supervisory Agent *** approves a supervisory merger to resolve problems related to operation of the association or when the association is determined by the Board to be in an unsafe or unsound condition. Any rights of the parties that have already vested, however, shall not be affected by such action."

Although the foregoing provision was not included in the contract at issue, the circuit court correctly read it into the contract as an implied term thereof. (*Hindu Incense Manufacturing Co. v. MacKenzie* (1949), 403 Ill. 390, 392, 86 N.E.2d 214; *Bethel Terrace, Inc. v. Village of Caseyville* (1976), 43 Ill. App. 3d 276, 279, 356 N.E.2d 1269.) The court also properly found that the contract terminated by reason of this implied term.

Plaintiff initially argues that the evidence is inconclusive as to whether the merger here was "supervisory"; Eckert, supervisory agent for the Board who participated in considering the instant merger application, averred that it was. The accompanying Board resolution does not designate the merger as such, but instead certifies that the grounds set forth in 12 U.S.C. sec. 1464(d)(6)(A)(i) (1982) existed in that Guaranty was insolvent or about to become so absent Board action. The cited statutory provision does not deal with supervisory mergers, but rather with the grounds for the appointment of a conservator or receiver for an institution. 12 U.S.C. sec. 1464(d)(6)(A)(i) (1982).

■ The nature of a supervisory merger is not clearly defined by the applicable Federal statutes and regulations; however, one Federal court, discussing the purpose of such mergers, noted that the Board can step in to assist "seriously financially weakened S&Ls" and held that under such circumstances, " 'supervisory' mergers preserve public confidence in the industry and avoid the harms to under or uninsured depositors resulting from liquidation." (*Independent Bankers Association of America v. Federal Home Loan Bank Board* (D.D.C. 1982), 557 F. Supp. 23, 25.) The Board's finding here that Guaranty was insolvent or about to become so, together with Eckert's uncontroverted affidavit, sufficed to establish the instant merger as "supervisory" within the meaning of 12 C.F.R. sec. 563.39(b)(5) (1984).

Although he had ample opportunity to do so, plaintiff failed to rebut effectively Eckert's affidavit, notwithstanding that the grounds relied upon by the court in dismissing the action were not raised explicitly in defendant's motion to dismiss. The court stayed entry of the dismissal for 30 days in order to permit plaintiff to file a motion

to vacate "if there be another basis for asserting any rights against the merged corporation." The dismissal was subsequently stayed for another 14 days. Plaintiff's proposed amended complaint included an allegation that the merger was voluntary; however, he filed no counteraffidavit or other matter controverting Eckert's affidavit.

Plaintiff urges that, because the basis for dismissal took him by surprise, the circuit court should have permitted him to file the amended complaint, which thereafter should have been considered in light of Eckert's affidavit. He maintains that since all well-pleaded facts and reasonable inferences rising therefrom are admitted by a motion to dismiss (*Kenneke v. First National Bank* (1978), 65 Ill. App. 3d 10, 12, 382 N.E.2d 309), the allegation in his amended complaint that the merger was voluntary accordingly would have been taken as true. Thus, he argues, Eckert's affidavit then would have created only a factual issue as to the nature of the merger (see *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 93, 405 N.E.2d 1256; *Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 710, 425 N.E.2d 1174), and dismissal would have been improper.

■ The amended complaint, however, was not considered here on a motion to dismiss, but on a motion to vacate the prior dismissal. In this posture of the case, the court was not required to assume the truth of plaintiff's allegations. Further, even though a complaint may purport to raise issues of material fact, when a motion to dismiss is supported by affidavits, as here, the opposing party cannot rely upon his complaint alone to raise issues of fact. (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457; *Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 507, 396 N.E.2d 34, *appeal denied* (1980), 79 Ill. 2d 625.) Although amendments should be liberally allowed in order to permit defects in a complaint to be cured (*DMI, Inc. v. Country Mutual Insurance Co.* (1980), 82 Ill. App. 3d 113, 114, 402 N.E.2d 805; *Anderson v. Rick's Restaurant & Cocktail Lounge* (1977), 45 Ill. App. 3d 992, 996, 360 N.E.2d 465), the court's decision in refusing to permit amendment will not be reversed absent a manifest abuse of discretion (*Batteast v. Argonaut Insurance Co.* (1983), 118 Ill. App. 3d 4, 6, 454 N.E.2d 706; *Lordahl v. Mauro* (1982), 109 Ill. App. 3d 478, 481, 440 N.E.2d 989). Plaintiff here had been afforded sufficient time to file a counteraffidavit or other matter to support his claim, but he failed to do so. The court, which properly could consider the ultimate efficacy of a claim in ruling on a motion to amend, reasonably could have concluded, as it did, that plaintiff's bald assertion was meritless.

*Economy Fire & Casualty Co. v. Pearce* (1979), 79 Ill. App. 3d 559, 566, 399 N.E.2d 151.

■ Plaintiff also insists that he was prejudiced by defendant's "hybrid" motion to dismiss, assertedly based on sections 2—606, 2—615 and 2—619 of the Code. (Ill. Rev. Stat. 1983, ch. 110, pars. 2—606, 2—615, 2—619.) Such "hybrid" motions are improper and will require reversal if prejudice to the nonmovant results. (*Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 642, 450 N.E.2d 1360. See also *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 406, 312 N.E.2d 605.) In the present case, defendant stated at the hearing on the motion that section 2—619 would apply to counts I and II and section 2—615 to count III. In *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360, cited by plaintiff, a "hybrid" motion was deemed prejudicial because the nonmovant was unable to file counteraffidavits as a result of the movant's failure to specify the nature of the motion. Here, plaintiff was given ample time to file counteraffidavits during the 44-day period and was not prejudiced.

Plaintiff argues further that his employment contract was enforceable against defendant, notwithstanding that the merger was supervisory. First, plaintiff maintains that the contract was "approved specifically" by the boards of directors of both Guaranty and defendant, as required by Federal regulation. (12 C.F.R. sec. 563.39(a) (1984).) Plaintiff's original complaint does not allege that Guaranty approved his contract; his amended complaint does so allege. Neither complaint, however, alleges that defendant specifically approved the contract. Maher, defendant's executive vice president, filed an affidavit in support of defendant's motion, and averred that the employment contract had never been presented for approval to or approved by defendant's board of directors, of which he also was a member.

■ Plaintiff nevertheless urges that such approval was given when defendant's board of directors ratified the merger agreement and cites paragraph 1.4 thereof, which provides that "all liabilities and obligations of every sort and character of Glenview shall be assumed by the Resulting Association [defendant] and may be enforced against it to the same extent as if such liabilities and obligations had been incurred and contracted by it." This language must be read together with paragraph 1.9 of the merger agreement, that "certain of all the full-time officers and employees of Glenview *** shall be employed by Wilmette in positions commensurate with their present responsibilities at starting salaries determined by the Wilmette Board of

Directors." As the circuit court found, this latter condition provides that only some officers and employees would be employed by defendant, which would independently set the terms of their compensation, and negates the inference that "all liabilities and obligations" referred to in the earlier paragraph applies to plaintiff's employment contract.

■■ Plaintiff maintains that evidence of his contract having been "approved specifically" can be inferred from his continued employment, after the merger, as president of the "Guaranty Division" of defendant. This circumstance, however, is equally consistent with plaintiff's status as an at-will employee, as it is with defendant's re-adoption of plaintiff's Guaranty contract. In the absence of evidence pointing to such readoption, the former interpretation must be accepted. Therefore, in construing the provisions of the merger agreement in conjunction with plaintiff's continued employment, the circuit court did not err by finding "no affirmative evidence of any adoption of the [employment] contract whatsoever."

■■ Plaintiff insists that his continued employment is an indication "that continuation of the contract is necessary for the continued operation of the institution," an exception to the contract termination provision of 12 C.F.R. sec. 563.39(b)(5) (1984). That regulatory section provides that the determination of whether an employee's contract is "necessary" is within the exclusive province of the FDIC and the Board. As neither the original nor amended complaint alleged that such a determination was made by the appropriate entity, plaintiff's contention in this regard must be rejected.

■■ Plaintiff argues further that his contractual right to severance pay had vested, and was thereby excepted from the termination provisions of 12 C.F.R. sec. 563.39(b)(5) (1984). Plaintiff did not raise this argument in the circuit court; he is therefore precluded from asserting it for the first time on appeal. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417; *In re Estate of Polley* (1982), 111 Ill. App. 3d 873, 880, 444 N.E.2d 714.) Notwithstanding this waiver, his argument is without merit.

Plaintiff cites *Salvatori Corp. v. Rubin* (1981), 159 Ga. App. 369, 283 S.E.2d 326, to support his contention that severance pay under an employment contract vests once the employee commences work. In that case, unlike here, the contract at issue unambiguously provided for severance benefits where an employee is involuntarily terminated, with or without cause. Here, however, the contract provided such benefits only upon plaintiff's termination without cause. As plaintiff's benefits are dependent upon the happening of a contingency—termination without cause—they do not "vest" until such contingency oc-

curs. (See *Vaughan v. Metal Lathers' Local 46 Pension Fund* (2d Cir. 1980), 626 F.2d 237, 239.) Plaintiff's contract had expired by operation of law prior to the actual termination of his employment; therefore, vesting could not have taken place regardless of whether he had been terminated with or without cause. The court did not err by dismissing the action.

## II

Plaintiff maintains that the circuit court erred by precluding him from asserting alternative causes of action in counts III and IV of his amended complaint.

■ Count III sought to state a cause of action for breach of the merger agreement. Although plaintiff set forth the elements required to establish an action for breach of contract (see *Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 946, 428 N.E.2d 1028), he failed to allege facts indicating that he had standing to prosecute such an action. Generally, only a party to a contract, or one in privity with a party, may enforce a contract, except that a third-party beneficiary may sue for breach of a contract made for his benefit. (*Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 1016, 377 N.E.2d 161.) A third-party beneficiary may sue under a contract when the benefit is direct to him, not when it arises only incidentally from the contract. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257, 178 N.E. 498; *Exchange National Bank v. Harris* (1984), 126 Ill. App. 3d 382, 389, 466 N.E.2d 1079.) In the case *sub judice*, plaintiff not only failed to allege that the merger agreement was entered to benefit him directly, but the agreement itself does not support such a theory. By providing that "certain" officers and employees of Guaranty would continue to work for defendant, apparently at defendant's discretion, any actual employment resulting from the merger agreement was merely an incidental benefit thereof.

Count IV of the amended complaint purported to state a cause of action for fraudulent misrepresentation against defendant and its president, John R. Gravee. The complaint alleged as defendant's "misrepresentations" that: Gravee "guaranteed" plaintiff's employment in a "meaningful role" following the merger; plaintiff's new position would be commensurate with his responsibilities at Guaranty; Gravee assured plaintiff that all necessary consents and actions would be obtained to effectuate the merger; and Gravee failed to disclose defendant's plan to repudiate the terms of plaintiff's employment contract. The complaint further alleged that: Gravee and defendant knew

these representations to be false; plaintiff relied upon them to his detriment; and plaintiff suffered damages as a proximate result of his reliance.

The foregoing allegations may otherwise appear to state a cause of action for fraudulent misrepresentations (see *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599); however, the statements attributed to Gravee, which concern future or contingent events, expectations, or probabilities, rather than present or preexisting facts, are not actionable. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 334, 371 N.E.2d 634; *Hayes v. Disque* (1948), 401 Ill. 479, 488, 82 N.E.2d 350; *Gross Valentino Printing Co. v. Clarke* (1983), 120 Ill. App. 3d 907, 912, 458 N.E.2d 1027; *Bank of Lincolnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 828, 444 N.E.2d 657.) The circuit court did not abuse its discretion by refusing to permit the instant amendment.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P.J., and PERLIN, J., concur.