Zack STAMP, Director of the State of Illinois and Liquidator of Cooperative Health Plan, Inc. and the Illinois Health Maintenance Organization Guaranty Association, Plaintiffs,

v.

INAMED CORPORATION, a Florida corporation, Defendant.

No. 90 C 6188.

United States District Court,
N.D. Illinois, E.D.

Oct. 18, 1991.

William Carlisle Herbert, Mary Kay McCalla, Hopkins & Sutter, P.C., Chicago, Ill., for plaintiffs.

James King Gardner, Kenneth M. Brown, Neal, Gerber & Eisenberg, Howard J. Stein, Daniel Ronald Gregus, Holleb & Coff, Chicago, Ill., for defendant.

MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on the defendant's motion to dismiss plaintiffs'

complaint for breach of contract. Defendant seeks dismissal pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

The plaintiffs are Zack Stamp, Illinois' Director of Insurance and Liquidator of Cooperative Health Plan, Inc. ("Director"), and the Illinois Health Maintenance Organization Guaranty Association. Plaintiffs have brought a two count breach of contract action on behalf of Cooperative Health Plan, Inc. ("Cooperative") against the defendant, Inamed Corporation ("Inamed"). In response, Inamed has moved to dismiss both counts pursuant to 12(b)(6).

On June 15, 1987, Inamed, its subsidiary CN Acquisition Corporation ("Cooperative-NowCare"), and John Hancock Health Plans, Inc. ("Hancock") entered into an agreement (the "JHHI Agreement") regarding Hancock's wholly-owned subsidiary, Cooperative Health Plan, Inc. ("Cooperative"). Under the JHHI Agreement, Hancock agreed to transfer ownership and control of Cooperative to Inamed. The actual transfer of ownership was effected by means of an agreement (the "Merger Agreement"). The Merger Agreement provided for the merging of Cooperative-NowCare (the subsidiary of Inamed) and Cooperative (then the subsidiary of Hancock). On July 24, 1987, Cooperative-NowCare was merged into Cooperative. As a result, Inamed became the sole shareholder of the surviving entity, Cooperative.

In Section 11(a) of the JHHI Agreement, Inamed agreed that:

(a) On and for two years following the Merger Date [July 24, 1987], Inamed shall make capital contributions and/or subordinated loans to Cooperative-Nowcare in such amounts as are necessary (a) in order for Cooperative-Nowcare to be in compliance with all financial requirements established by Illinois statute or by the Illinois Department of Insurance and which are applicable to health maintenance organizations and....

.        .        .        .        .

(c) For two years following the Merger Date, Inamed shall use its best efforts to take all such other action as may be necessary to prevent Cooperative-Nowcare from losing its license to operate as a health maintenance organization in Illinois.

Furthermore, the Merger Agreement provided that as of July 24, 1987, Cooperative, as the surviving corporation, was to possess "all rights, privileges, power and franchises" of the merging entities. Both agreements provide that Illinois law would govern the contractual relationship between the parties.

In August 1988, the Circuit Court of Cook County, Illinois found Cooperative to be insolvent, and in March, 1989 ordered Cooperative liquidated. Subsequent to this order, Director brought suit on behalf of Cooperative. Count I alleges that Inamed breached paragraph 11(a) and 11(c) of the JHHI Agreement by allowing Cooperative to become insolvent.

Count II alleges breach of contract but is based on another set of circumstances. In February 1988, prior to the Circuit Court's actions, Cooperative agreed to purchase its subsidiary's assets and liabilities. In February, Cooperative applied to the Illinois Department of Insurance for approval of its Purchase Agreement with its subsidiary. Cooperative's filed application stated that Inamed "will make a loan of $500,000 to Cooperative in return for a Subordinated Promissory Note." This subordinated note was attached to the application. Count II of plaintiffs' complaint alleges that Inamed breached this promise to provide Cooperative a $500,000 loan.

Inamed raises two arguments in support of its dismissal motion. First, it argues that Cooperative has no standing to sue because it was neither a party nor a third party beneficiary to the JHHI or Merger agreements. Second, Inamed also contends that Cooperative's suit must be dismissed because it is the equivalent of Inamed suing itself since Cooperative is Inamed's wholly-owned subsidiary. Defen-

dant relies on these two arguments in support of its 12(b)(6) motion.

## DISCUSSION

### 1. *Rule 12(b)(6) Standard*

The moving party must meet a high standard to have a claim dismissed pursuant to Rule 12(b)(6). The purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the case. The complaint's allegations should be construed liberally, and it "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). We address Inamed's motion with this standard in mind.

### 2. *Cooperative Not a Party or Third Party Beneficiary*

Inamed's first contention is that Count I must be dismissed because Cooperative was neither a party nor a third party beneficiary to the JHHI or Merger agreements. Because we conclude that Cooperative was a third party beneficiary, we reject this argument.

Generally, only a party to a contract or one in privity with a party may sue to enforce the contract. *Wilde v. First Fed'l Sav. & Loan*, 134 Ill.App.3d 722, 89 Ill.Dec. 493, 499, 480 N.E.2d 1236, 1242 (1985). An exception to this rule, however, is if the party is a direct, as opposed to an incidental, beneficiary. *Id.* A party is a direct beneficiary if the contracting parties expressed an intent to confer a benefit upon the third party. *F.W. Hempel & Co. v. Metal World, Inc.*, 721 F.2d 610, 613 (7th Cir.1983). The contract's express language and surrounding circumstances at the time of contracting determines whether the par-

ties intended to directly benefit the third party. *Id.* The contract, however, "need not name a particular third party beneficiary." *Id.* Under Illinois law, there is a strong presumption that parties contract for themselves and only incidentally for third parties. *Id.* at 614.

The JHHI agreement clearly manifests an intention to directly benefit Cooperative. In the agreement, Inamed promised to maintain Cooperative's solvency and viability for two years. § 11(a), (c). Furthermore, in the agreement, Hancock agreed to discharge or provide Cooperative "with such funds as may be necessary to effect discharge of all liabilities and obligations of Cooperative existing" on or before the merger date. § 2(a). This promise directly benefited Cooperative by relieving its predecessor corporation of all pre-merger debts. Therefore, Cooperative was clearly a direct third party beneficiary of the JHHI agreement in support of dismissal.

Cooperative is also a direct third party beneficiary under the Merger Agreement. This contract expressly provided that Cooperative, as the surviving corporation, was to possess "all rights, privileges, power and franchises" of the merging entities. Furthermore, the Merger Agreement's sole purpose was to create Cooperative as the surviving entity. Accordingly, Cooperative was a third party beneficiary under this agreement. Therefore, we reject Inamed's first standing argument.

### 3. *Cooperative Cannot Sue its Parent*

Inamed, however, makes a second argument in support of its 12(b)(6) motion. Inamed contends that neither Cooperative nor Director has standing to sue.[1] In support of this argument, Inamed contends that a parent corporation and its wholly-owned subsidiary should be viewed as a single economic unit, and "a single economic unit cannot sue itself." This particular issue of whether a wholly-owned subsidiary can sue

---

1. Director has sued on behalf of Cooperative pursuant to Ill.Rev.Stat. ch. 73, § 803 (1987). This statute provides Director with "title to all ... rights of action of the [insolvent] company"

as of the liquidation date. Inamed argues that since Cooperative had no standing to sue prior to the liquidation order neither does Director.

its parent for breach of contract appears to be one of first impression. Nevertheless, well established principles of corporations law and analogous case law lead us to reject Inamed's position.

■ One of the most important and pervasive principles underlying corporations law is the "entity theory." Fletcher Cyc. Corp. § 25, at 512–15 (1990); Henn & Alexander, Laws of Corporations § 146, at 345 (1983). This theory provides that a corporation is a separate entity, distinct from its corporate and non-corporate shareholders. *Beatrice Foods Co. v. Illinois Insur. Guaranty Fund*, 122 Ill.App.3d 172, 77 Ill.Dec. 604, 607, 460 N.E.2d 908, 911 (1984). As one commentator has stated:

> A corporation is an entity irrespective of, and entirely distinct from, the persons who own its stock, and it is well settled that all the shares in a corporation may be held by a single person and yet the corporation continue to exist; nor does the fact that one person owns all the stock, make him and the corporation one and the same person.... It is also immaterial whether the sole owner of stock is a man or another corporation, and the corporation owning such stock is as distinct from the corporation whose stock is owned as the man is from the corporation of which he is the sole member.

Joyce on Actions By and Against Corporations, § 224 (1910). This entity theory is important in that it provides the necessary foundation for many well-entrenched corporate law principles.[2]

Because of its importance, courts have rigidly recognized the independent existence of the corporate entity distinct from its shareholders. *See, e.g., Beatrice Foods Co.*, 77 Ill.Dec. at 606–07, 460 N.E.2d at 910–11 (concluding that parent of wholly-owned subsidiary retained separate corporate existence, and therefore parent-shareholder was not legally obligated to pay the judgment entered against subsidiary for its employee's tortious conduct).

■ The entity theory, however, is not impenetrable. Courts will disregard the corporate entity if necessary to further the interests of "public convenience, fairness and equity." *Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir.1981); *Gallagher v. Reconco Builders, Inc.*, 91 Ill.App.3d 999, 47 Ill.Dec. 555, 558–59, 415 N.E.2d 560, 563–64 (1980); *Stap v. Chicago Aces Tennis Team, Inc.*, 63 Ill.App.3d 23, 20 Ill.Dec. 230, 234, 379 N.E.2d 1298, 1302 (1978). A common example of such cases is where a subsidiary's creditor seeks to pierce a subsidiary's corporate existence and reach the parent-shareholder. Courts consider a number of factors in these creditor piercing cases. *See McCracken v. Olson Companies, Inc.*, 149 Ill.App.3d 104, 102 Ill.Dec. 594, 598, 500 N.E.2d 487, 491 (1986).

■ Inamed's suit, however, is not the typical piercing suit. Rather, it is a much less commonly known suit referred to as a "reverse piercing" case. Fletcher Cyc. Corp. § 43.50, at 780. In these cases, the shareholder-parent corporation, not a creditor, seeks to disregard its subsidiary's corporate existence. *Id.* Similar to the creditor piercing suits, notions of equity and justice control; however, beyond this, courts have not established specific factors to help guide their decision-making in these cases. *See* Comment, *Corporations: Disregard of the Corporate Entity for the Benefit of Shareholders*, 1963 Duke L.J. 722, 722 (1963) ("Unlike the corporate creditor," the shareholder who seeks to disregard its corporation's existence "will find few black-letter rules" regarding his case).

Courts also have expressed an unwillingness to disregard the corporate entity in reverse piercing suits. Fletcher Cyc. Corp. § 43.50, at 780. Such reluctance is based on "reciprocity principles." *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir. 1979). That is, courts have expressed the belief that "persons who choose to become

---

**2.** These principles include: (1) the concept of limited liability, (2) the notion that corporations retain capacity to hold property, (3) the recognition that corporations can "contract not only with outsiders but also with its own shareholders," (4) the notion that corporations can sue and be sued, and finally (5) the recognition that corporations enjoy continued existence notwithstanding changes in its membership. Henn, § 146, at 345.

incorporated may not evade the consequences of corporateness when that would suit their convenience." Henn, at § 149, p. 357; *see also Superior Coal Co. v. Department of Finance*, 377 Ill. 282, 36 N.E.2d 354, 358 (1941) (finding that where corporations observe the "formalities incident to separate corporate existence and receive substantial economic benefits therefrom, they will not be permitted to disregard the distinction for the purpose of avoiding the burdens likewise incident to the maintenance of separate corporate identities"); *cf. Lumpkin v. Envirodyne Indus.*, 933 F.2d 449, 460 (7th Cir.1991) (applying Illinois law and noting that the *"alter ego* doctrine is a sword, not a shield, the basis for a cause of action, not a defense").

One illustrative case in which the Sixth Circuit refused to disregard the corporate existence of a wholly-owned subsidiary at the insistence of its parent is *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir. 1979). In *Boggs*, widows of deceased mine workers sued Blue Diamond Coal Co., ("Blue Diamond"), the sole shareholder of Scotia Coal Company. *Id.* at 657–58. The plaintiffs alleged that Blue Diamond's negligence caused a mine explosion. *Id.* at 658. Blue Diamond's theory for summary judgment was that plaintiffs' exclusive remedy was under Kentucky's workers compensation statute because it and its wholly-owned subsidiary produced "coal as part of an integrated business and should be considered a joint or single 'employer.'" *Id.*

The Sixth Circuit refused to ignore the subsidiary's independent corporate existence. *Id.* at 662. In so holding, the court reasoned that Kentucky adhered to "customary principles of corporation law" which recognized a "general aversion" for disregarding the corporate entity. *Id.* at 661–62. Moreover, the court reasoned that:

> [A] business enterprise has a range of choice in controlling its own corporate structure. But reciprocal obligations arise as a result of the choice it makes. The owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued....

*Id.* at 662. Therefore, the court refused to integrate Blue Diamond's corporate existence with that of its wholly-owned subsidiary.

Like the *Boggs* court, we will not disregard the corporate separateness of a wholly-owned subsidiary. Illinois law clearly recognizes the importance of a corporation's independent legal existence. *Superior Coal Co.*, 36 N.E.2d at 358 (acknowledging the "general rule" of recognition and that "courts will ignore the fiction of corporate entity only with caution"); *Loy v. Booth*, 16 Ill.App.3d 1077, 307 N.E.2d 414, 417 (Ill.App.Ct. 2nd Dist.1974) (noting that Illinois courts will "not lightly disregard the law's fiction of a separate corporate identity"). Inamed has pointed to no inequity or injustice that will result by recognizing Cooperative's corporate existence. Moreover, it is clear that Inamed freely chose to form a subsidiary and consequently has reaped the benefits of its subsidiary's independent corporate existence.[3] Inamed cannot reap the benefits of incorporation while at the same time side-stepping its reciprocal pit-falls. Furthermore, Inamed's position is logically flawed.[4] Accordingly, we find that Cooperative is a separate entity capable of suing

---

**3.** For instance, as the parties stand right now, Inamed is not responsible for Cooperative's corporate debts. This is one of the primary benefits provided by the entity theory. *See McCracken v. Olson Companies, Inc.*, 149 Ill.App.3d 104, 102 Ill.Dec. 594, 597, 500 N.E.2d 487, 490 (1986) (finding that the entity theory "provides the traditional basis for the legal concept of limited liability").

**4.** For instance, Inamed argues that a wholly-owned subsidiary cannot sue its parent for

breach of contract because they are a single corporation, and a single entity cannot sue itself. However, if we accepted such a position, it would be equally true that a parent and wholly-owned subsidiary could never contract with each other, since a person cannot contract with itself. Inamed, however, correctly refuses to accept such an extreme position. Reply Brief, p. 7–8. We likewise cannot sanction a rule that would promote such logical inconsistencies.

other parties, including its parent corporation.

We find further support for our decision in a number of federal circuit bankruptcy cases. These cases hold that a number of states' laws permit a wholly-owned subsidiary to sue its parent under an alter-ego theory. *See Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir.1987) (Illinois law); *In re SI Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987); *St. Paul Fire and Marine Insurance Co. v. Pepsico, Inc.*, 884 F.2d 688 (2d Cir.1989). *But see Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988); *Mixon v. Anderson*, 816 F.2d 1222 (8th Cir. 1987). These decisions stand for the novel proposition that a wholly-owned subsidiary can sue its parent to pierce its own corporate veil.[5] These courts have reasoned that such a holding is consistent with the equitable nature underlying the piercing remedy and the primary policy objectives of the Bankruptcy Code. *See, e.g., In re SI Acquisition, Inc.*, 817 F.2d at 1152–53.

Our decision is consistent with this line of cases. If a wholly-owned subsidiary can sue its parent in an attempt to pierce its own corporate existence, a subsidiary surely can sue its parent for breach of contract. This is particularly true where the contract action is brought by a trustee or liquidator on behalf of a judicially recognized insolvent subsidiary. Additionally, our reasoning is not inconsistent with the decisions of those circuit courts that have held that a subsidiary cannot sue its parent under an alter-ego theory. *See Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988); *Mixon v. Anderson*, 816 F.2d 1222 (8th Cir.1987). Nowhere in these cases did the courts conclude that a subsidiary and parent were one and the same entity and therefore could not sue each other. Rath-

er, their reasoning was premised on the underlying nature of the states' laws at issue. These states' laws viewed the "alter ego theory of piercing the corporate veil" as "one personal to the corporate creditors rather than the corporation itself." *Mixon v. Anderson*, 816 F.2d at 1225. This reasoning does not adversely affect our conclusion since the underlying cause of action here clearly permits a third party beneficiary to sue a contracting party. Therefore, we find that Director can sue Inamed on behalf of Cooperative for breach of contract since Cooperative could have done so.

Inamed's reliance on *Copperweld Corp. v. Independent Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), is misplaced. In *Copperweld*, the Supreme Court held that a wholly-owned subsidiary and parent are incapable of conspiring with each other under section 1 of the Sherman Antitrust Act. *Id.* at 770–71, 104 S.Ct. at 2741–42. The key to the Court's reasoning, however, was its focus on the underlying concern of the Sherman Act which is to prohibit the concerted activity of "two independent sources of economic power [that] previously pursu[ed] *separate interests.*" *Id.* (emphasis added). Our conclusion is entirely consistent with the *Copperweld* decision. We do not hold that a wholly-owned subsidiary has a separate economic agenda than its parent. We merely conclude that they are independent entities, each worthy of recognition here. Therefore, *Copperweld* does not require dismissal.

Inamed's reliance on cases that have applied *Copperweld*'s reasoning and expanded it to civil conspiracy cases also must fail. *See Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F.Supp. 1154 (D.Kan.1990) (applying *Copperweld*'s reasoning and holding that for purposes of civil conspiracy a parent and wholly-owned subsidiary are not

---

**5.** The reason why the issue we address today is one of first impression and why a scenario where a subsidiary would seek to pierce its own veil is uncommon is readily apparent. In a non-bankruptcy context, no one will bring a piercing suit against the parent on behalf of the subsidiary since the parent controls the subsidiary's actions. *See In re Western World Funding, Inc.*, 52 B.R. 743, 783 (Bankr.D.Nev.1985) (recognizing that "[t]here is only a practical—

not a legal or logical—difficulty in a corporation's bringing an alter ego action in its own name: The defendants who so completely dominate the corporation as to constitute its alter ego are not likely to institute an action to determine their own liability for corporate debts"). The issue, however, is far less novel in a bankruptcy context where a trustee or liquidator becomes involved.

two entities); *Laxalt v. McClatchy,* 622 F.Supp. 737 (D.Nev.1985) (same). These decisions differ from this Court's articulated view of *Copperweld* generally and civil conspiracy among affiliated corporations in particular. *See In re Conticommodity Services, Inc.,* 733 F.Supp. 1555, 1568 (N.D.Ill.1990) (limiting *Copperweld* "to the context of antitrust actions" and refusing to hold that a wholly-owned subsidiary can never engage in civil conspiracy with its parent); *cf. Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271 (7th Cir.1989) (refusing to extend the *Copperweld* reasoning to RICO actions). Accordingly, Inamed's civil conspiracy cases are not controlling, and its motion to dismiss pursuant to 12(b)(6) is denied.[6]

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss plaintiffs' complaint is denied.

---

**6.** The other decisions cited by Inamed in support of its motion are equally unhelpful. *See Deauville Corp. v. Federated Dept. Stores,* 756 F.2d 1183 (5th Cir.1985); *Security Tire & Rubber v. Gates Rubber,* 598 F.2d 962 (5th Cir.1979); *SI Handling Systems v. Heisley,* 658 F.Supp. 362 (E.D.Pa.1986); *Ford Motor v. Lyons,* 137 Wis.2d 397, 405 N.W.2d 354 (App.1987). None of the cited cases directly address the issue presented by Inamed's motion. Accordingly, these cases are distinguishable, and we refuse to expand their scope to the factual circumstances presented here.