**In re DYNACIRCUITS, L.P., Debtor.**

**Bankruptcy No. 91 B 27112.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 26, 1992.

---

Mark Weber of Schwartz, Cooper, Kolb & Gaynor, Chtd., Chicago, Ill., for petitioner.

Robert D. Gordon of Towbin & Zazove, Ltd., Chicago, Ill., for creditor.

## MEMORANDUM OPINION

### JOHN D. SCHWARTZ, Chief Judge.

This matter is before the court on the motion of Gary Kelly ("Kelly") for the allowance of certain commission claims as administrative expenses and for their prompt payment. For the reasons stated herein, the court, after considering the pleadings, exhibits, affidavit, and memoranda filed, denies Kelly's motion.

## JURISDICTION AND PROCEDURE

This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B). Accordingly, the court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334. This motion is before the court pursuant to Local Rule 2.33 of the Northern District of Illinois referring bankruptcy cases and proceedings to this court for hearing and determination.

## FACTS AND BACKGROUND

Kelly worked as a salesman for the Chicago Etching Corporation, predecessor to the Debtor, Dynacircuits, L.P. ("Dynacir-

cuits" or "Debtor"),[1] for approximately twenty-two years. During the period relevant to Kelly's motion, the relationship between Dynacircuits and Kelly was governed by the letter of agreement ("Agreement") of December 4, 1990. Pursuant to the Agreement, Kelly was to be considered an independent contractor. The Agreement granted Kelly an exclusive territory within which he was to act as the Debtor's salesman. Under the Agreement, Kelly's duties included promoting the Debtor's product, soliciting and taking orders, visiting customers and forwarding orders to the Debtor. Kelly had no authority to accept orders on behalf of the Debtor. Orders were not considered accepted by the Debtor "unless and until accepted in writing or by shipment and invoicing." (Kelly's Motion Ex. A at 2).

Kelly's compensation consisted of a five percent commission on the net amount of invoices after trade discounts, sales taxes, freight, and similar items were deducted from the amount received on the orders he obtained and which Debtor accepted. According to the Agreement, Kelly's commissions were not "deemed earned and accrued until the date of the invoice payment of the customer and not payable until the fifteenth day of the following calendar month." (Kelly's Motion Ex. A at 3). To the extent the Debtor was required to refund a payment to a customer, Kelly's commission was proportionately reduced. Kelly's commission was likewise reduced if customer payments were late. If a payment was 91 to 120 days late, Kelly only received a 2.5% commission and if payment was over 120 days late Kelly received no commission. Upon termination of the Agreement, Kelly continued to receive commissions on all orders accepted within sixty days of his termination in the manner provided in the Agreement.

On December 19, 1991, the Debtor commenced a voluntary bankruptcy case pursuant to Chapter 11 of the Bankruptcy Code.[2] Kelly received a letter from the Debtor

---

**1.** The term "Debtor" will also include debtor-in-possession.

**2.** 11 U.S.C. §§ 101–1330 (1982 & Supp.1992). All section references are to the Bankruptcy Code unless otherwise indicated.

dated January 15, 1992 informing him that it would not be paying commissions to salespeople for any invoiced shipments made prior to the December 19, 1991 bankruptcy filing date. (Kelly's Reply Ex.D). Pursuant to a letter dated March 9, 1992, the Debtor terminated the Agreement with Kelly effective March 10, 1992. On March 16, 1992, Kelly filed a motion for allowance and payment of an administrative priority claim for commissions on orders placed prior to the commencement of the Debtor's bankruptcy case but not paid by customers until after the bankruptcy case had begun.

## DISCUSSION

Kelly earned commissions based on the net value of orders placed by Dynacircuits' customers from his sales territory. Pursuant to the Agreement, Kelly's commissions were not deemed earned or accrued until the Debtor's customers had paid for their orders. The commissions that Kelly's motion seeks to have allowed as an administrative expense priority consist of commissions on orders placed by customers prepetition but for which they did not pay until post-petition. Kelly argues that because his commissions were not deemed earned and accrued until after the Debtor commenced its bankruptcy case, his claim is for "commissions for services rendered after the commencement of the case" and entitled to administrative priority status. 11 U.S.C. § 503(b)(1)(A).

 Section 503(b) of the Bankruptcy Code provides in relevant part:

(b) After notice and a hearing, there shall be allowed, administrative expenses . . . including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries or *commissions for services rendered after the commencement of the case[.]* (emphasis added).

Section 507(a), in turn, grants first priority status to administrative expenses allowed pursuant to § 503(b). The burden of proving entitlement to an administrative expense priority rests with the party seeking its allowance. *In re Highland Group,*

*Inc.,* 136 B.R. 475, 481 (Bankr.N.D.Ohio 1992); *In re Patch Graphics,* 58 B.R. 743 (Bankr.W.D.Wis.1986).

 Statutory priorities are narrowly construed. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 100 (2nd Cir.1986) citing *Joint Industry Bd. of Electrical Industry v. United States,* 391 U.S. 224, 228, 88 S.Ct. 1491, 1493, 20 L.Ed.2d 546 (1968). The determination of whether an administrative expense will be allowed turns on the timing of the services rendered for which the allowance is sought. The Seventh Circuit has adopted a two part test originally set forth by the First Circuit in *In re Mammoth Mart, Inc.,* 536 F.2d 950 (1976) which provides that an administrative expense is allowed where the debt (1) arises from a transaction with the debtor-in-possession; and (2) is beneficial to the debtor-in-possession in the operation of its business. *In re Jartran,* 732 F.2d 584, 586 (7th Cir.1984). As this test demonstrates, it is the time at which the services are rendered that is dispositive of the issue of whether an administrative expense is allowed. The fact that a creditor's right to payment depends on a post-petition contingency is irrelevant. *In re Precision Carwash Corp.,* 90 B.R. 34 (Bankr.E.D.N.Y. 1988) citing *Denton & Anderson Co. v. Induction Heating Corp.,* 178 F.2d 841 (2nd Cir.1949); *In re Highland Group, Inc.,* 136 B.R. 475 (Bankr.N.D.Ohio 1992).

Priority status is conferred upon administrative expenses to induce third parties to provide services to the debtor-in-possession on credit. *In re Jartran, Inc.,* 732 F.2d 584, 586 (7th Cir.1984). Without priority status, it is unlikely a debtor-in-possession could obtain post-petition services without paying for them in advance. *Jartran* at 586. Allowance of administrative priority status benefits unsecured creditors by inducing third parties to provide services to the debtor-in-possession and presumably increasing the likelihood of a successful reorganization that will result in a greater disbursement of funds to the unsecured creditors than they would receive in a liquidation proceeding. However, despite its potential benefit to unsecured creditors,

§ 503(b) is strictly construed because administrative expenses receive first priority status pursuant to § 507(a) therefore reducing the funds available for the unsecured creditors.

■ The commissions at issue in this proceeding do not qualify as administrative expenses under § 503(b) and therefore are not entitled to priority status pursuant to § 507. The commissions are simply not for "... services rendered after the commencement of the case." 11 U.S.C. § 503(b). First, the services performed by Kelly to obtain orders for the Debtor occurred pre-petition and therefore did not arise from a transaction with the debtor-in-possession. Kelly's responsibility pursuant to the Agreement was to obtain orders for the Debtor. Once an order was placed by a customer, Kelly's right to payment of his commission was contingent upon whether the customer paid the Debtor. But the timing of when Kelly's right to payment arose is irrelevant to the priority status of his commissions because his right to payment depended solely on a third party contingency; namely, when customers paid Dynacircuits. *Precision Carwash* at 30. Instead, the relevant time frame is when the acts occurred that gave rise to Kelly's contingent right to payment. Here, those acts occurred pre-petition when Kelly performed his duties under the Agreement that led to customer orders. Because Dynacircuits as debtor-in-possession did not exist when Kelly performed under the Agreement, Dynacircuits' debt to Kelly did not arise from a transaction with Dynacircuits as debtor-in-possession and therefore his commissions are not entitled to administrative expense priority status.

Second, because Kelly's services resulted in orders placed prepetition, before Dynacircuits as debtor-in-possession existed, the benefit of Kelly's services was not a benefit conferred upon the debtor-in-possession. It is true that the debtor-in-possession did benefit from customer payments on orders procured by Kelly, but the relevant bene-fits that must be scrutinized under the Seventh Circuit's test are the benefits conferred by the party seeking allowance of an administrative expense. This distinction was emphasized by the Second Circuit in *Denton & Anderson Co. v. Induction Heating Corp.,* 178 F.2d 841 (2nd Cir. 1949).[3] In *Denton,* the Second Circuit denied administrative priority status for certain commission claims. Like this case, the claimant in *Denton* procured orders from customers for the debtor's goods within certain designated territories for which it was entitled to compensation but not until paid by the debtor's customer. The claimant sought priority status for commissions on orders placed pre-petition, but not paid for until after the filing. The court determined that the claimant was not entitled to priority status for the services it performed because 1) those services were performed before the filing of the case; and 2) no benefit was conferred upon the debtor's estate by the claimant's services. The Second Circuit explained:

> We see nothing in appellant's contention that appellant should have a preferred claim because the debtor's estate was, by appellant's services, enriched when debtor, having filed the orders, was paid. The estate was no more enriched than it would have been had the debtor bought goods on credit before filing the arrangement and sold them afterwards; and no one would argue that the unpaid seller of such goods is entitled to more than a general claim.

*Denton* at 844. Likewise, in this case, Dynacircuits benefitted from the services of Kelly to the extent that he provided it with customer orders, but that benefit was conferred upon the Debtor pre-petition and therefore did not benefit the debtor-in-possession and is not entitled to a administrative expense priority status.

This determination is further supported by the policy reasons for which administrative expense priorities were created. Section 503 induces third parties to extend

---

3. This opinion is authored by Judge Jerome Frank. Judge Frank is originally from Chicago and a close friend of the writer's family. He was considered by Learned Hand to be the keenest legal mind that he had ever known.

credit to trustees and debtors-in-possession. Kelly completed all actions necessary to earn the commissions at issue in this case prior to Dynacircuits commencing this case. As a result, an administrative expense priority was not necessary to induce Kelly to do business with Dynacircuits. Furthermore, allowance of administrative expense priority status is meant to facilitate reorganization so unsecured creditors will receive more than they could in a liquidation. However, if Kelly is allowed an administrative expense priority, the unsecured creditors in this case will be harmed because the funds available to them will be reduced.

In opposition, Kelly argues that while he is paid on a per order basis, this method of computing his compensation is more a matter of convenience than it is compensation for work performed to obtain a particular order. Kelly contends that to view each order as a separate transaction for which he is paid is erroneous in that it overlooks the value to the Debtor of his ongoing personal relationship with customers. As evidence of this, Kelly cites the provision of the Agreement that grants Kelly commissions for orders placed for sixty days after he is terminated.

The court does not agree that tying Kelly's compensation to particular orders was "somewhat arbitrary." (Reply at 4). It is evident from the Agreement that the Debtor and Kelly intended that Kelly receive compensation for obtaining particular orders. Kelly contacted customers, distributed the Debtor's literature and performed other duties that culminated in the procurement of their orders. Once the order was placed, Kelly had done all that he was required to do pursuant to the Agreement to earn his commission. All that remained was for the customer to pay before Kelly's right to his commission arose and the amount of that commission was determined. The method of computing Kelly's compensation is not made arbitrary by the provision of the Agreement allowing Kelly to continue receiving commissions on orders placed for sixty days after his termination. That provision can also be interpreted as constituting compensation for services performed in pursuit of particular

orders but which had not yet culminated in actual orders at the time of Kelly's termination.

Kelly also argues that denying administrative expense priority status for the commissions at issue here unilaterally modifies the terms of the Agreement between the parties. (Reply at 5). However, it is not the terms of the Agreement that are modified by enforcement of the Bankruptcy Code but against whom the Agreement is enforced. The terms of the Agreement are binding between Kelly and Dynacircuits pre-petition and Kelly and the debtor-in-possession post-petition. The terms of the Agreement do not change but the timing of the commencement of the Debtor's case dictates against whom the terms are enforceable at a given point in time. Because the commissions at issue here are the result of services performed pre-petition, they do not constitute administrative expenses entitled to first priority status.

■ Finally, Kelly argues that the doctrines of waiver and estoppel prevent Dynacircuits from arguing that Kelly is not entitled to an administrative expense priority. Kelly bases his waiver and estoppel arguments on representations made by the Debtor in a letter dated January 15, 1992. The letter states, "Our attorneys have advised us that we cannot release any commissions on any invoiced shipments made prior to the filing date.... When we receive payment for involved shipments that are post-petition, 12–20–91 and later, the commissions will be paid as normal." (Reply Ex.D).

A waiver only occurs where a party undertakes the intentional relinquishment of a known right. *Cox v. Kaufman*, 212 Ill. App.3d 1056, 156 Ill.Dec. 1031, 571 N.E.2d 1011. No waiver occurred in this case for two reasons. First, the debtor-in-possession held no right that it could have waived. It is Kelly who is asserting a right to an administrative expense priority. The debtor-in-possession is merely arguing that Kelly has no right to an administrative priority, not asserting a right itself. Second, the letter does not manifest an intent

on the part of the Debtor to relinquish anything. The language of the January 15, 1992 letter reflects no more than an intent to enforce the provisions of the Bankruptcy Code as interpreted by Debtor's counsel.

Kelly also argues that the Debtor is estopped from arguing that he is not entitled to an administrative priority. Under Illinois law, equitable estoppel requires (1) a misrepresentation by the party to be estopped inducing reliance by the claimant; (2) either actual or implied knowledge that the representations were untrue when made; (3) intent that the claimant rely upon the misrepresentations; (4) reliance by the claimant upon the misrepresentations without knowledge of or reasonable means of knowing the true facts; and (5) prejudice to the claimant if the adverse party is not estopped. *Dresser Industries, Inc. v. Pyrrhus A.G.,* 936 F.2d 921 (7th Cir.1991). There is no indication that Kelly relied to his detriment on the representations set forth in the Debtor's January 15, 1992 letter. Therefore, the Debtor is not estopped from arguing that Kelly is not entitled to an administrative expense priority on the commissions at issue in this proceeding by reason of the January 15, 1992 letter.

## CONCLUSION

For the foregoing reasons, Gary Kelly's motion for allowance and payment of an administrative expense priority for commissions on orders placed pre-petition but paid by Dynacircuits' customers post-petition is denied.