**In the Matter of PATCH GRAPHICS, Debtor.**

**Bankruptcy No. MM7–82–01233.**

United States Bankruptcy Court, W.D. Wisconsin.

March 7, 1986.

See also 32 B.R. 373.

Michael J. Byron, Grutzner, Byron, Holland & Vollmer, Beloit, Wis., for B.I.W. Credit Union.

William J. Rameker, Murphy & Desmond, S.C., Madison, Wis., for debtor.

Jerry J. Armstrong, Madison, Wis., trustee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

The debtor, Patch Graphics, filed a petition for relief under chapter 11 of the Bankruptcy Code on July 15, 1982. A plan was confirmed on October 25, 1983. On May 11, 1984, the movant in this proceeding, B.I.W. Credit Union, extended a loan of $31,000.00 to the debtor for the purchase of a "Varityper Comp/Edit 5810 Phototypesetter Image previewer" along with various accessories.[1] The equipment was the subject of a security agreement in favor of B.I.W. and was used by Patch Press, Inc., a related corporation in the operation of its business under a chapter 11 plan.

On March 22, 1985, the debtor's case was converted to a chapter 7. On June 17, 1985, after a hearing in this court B.I.W.'s security interest in the equipment was found to have not been properly perfected. That decision was affirmed by the district court.

---

**1.** B.I.W. alleges that the current balance due is $30,207.17 plus daily interest of $12.6745 from November 9, 1984 until paid. B.I.W. also states that the estimated value of the collateral is now $20,000.00.

On August 30, 1985, B.I.W. filed an application for allowance of administrative expense in the amount of the balance due on the loan pursuant to 11 U.S.C. § 503(b)(3)(D).[2] B.I.W. alleges that its extension of credit in this matter made a "substantial contribution to the debtor's reorganization plan." A hearing on B.I.W.'s claim was held on September 9, 1985. There was insufficient evidence adduced at that hearing to show that the equipment purchased with the proceeds of B.I.W.'s loan was necessary to this debtor's chapter 11 case.

■ I have been unable to find any cases which explicitly state that a large item of capital expenditure may not be treated as an administrative expense. However, the tenor of the cases suggests that items supplied to the estate must be essential for the preservation of the estate. A court must consider two main factors in deciding whether to allow an administrative expense. First the expense in question must be shown to have been "actual and necessary." Second, the expense must not have been incurred primarily in the interest of the claimant, and must in fact have benefitted the estate and creditors as a whole.

The principal of allowing administrative expenses in bankruptcy cases has a long history dating back to the Bankruptcy Act of 1867. *See* 3 *Collier on Bankruptcy* ¶ 503.03 at 503–10 et seq. (15th ed. 1985). Section 503(b)(1)(A) is drawn from section 64 of the Bankruptcy Act, former 11 U.S.C. § 104, which provided in relevant part that "the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition" are entitled to first priority. *In Re Prime, Inc.,* 37

B.R. 897, 898 (Bankr.W.D.Mo.1984) (*quoting* former 11 U.S.C. § 104). The *Prime* opinion cites a leading Supreme Court case for the proposition that "the words preserving the estate include the larger objective, common to arrangements, of operating the debtor's business with a view to rehabilitating [it]." *Id. quoting Reading Company v. Brown,* 391 U.S. 471, 475, 88 S.Ct. 1759, 1762, 20 L.Ed.2d 751 (1968). The costs and expenses of preserving an estate are not restricted to the categories specified in section 503 but include other necessary costs and expenses incurred in running a business during the pendency of a chapter 11 case. *Prime,* 37 B.R. at 898.

■ An administrative expense may not be allowed absent a finding that the expense is necessary for preserving the estate. *In Re Club Development & Management Corp.,* 27 B.R. 610, 612 (Bankr.App. 9th Cir.1982); *In Re Rhymes, Inc.,* 14 B.R. 807, 808 (Bankr.D.Conn.1981). Since an administrative expense constitutes a priority claim any recovery must be subject to strict scrutiny by the court. Priority statutes are strictly construed. *Standard Oil Company v. Kurtz,* 330 F.2d 178, 180 (8th Cir.1964). The burden of proof is upon the party seeking an administrative claim. *See Woods v. City Nat. Bank & Trust Co.,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941). The terms "actual" and "necessary" contained in 11 U.S.C. § 503(b)(1)(A) must be narrowly construed in order to keep administrative expenses at a minimum and thus preserve the estate for the benefit of all creditors. *In Re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 121 (Bankr.S.D.N.Y.1982); *see Otte v. United States,* 419 U.S. 43, 53, 95 S.Ct. 247, 254, 42 L.Ed.2d 212 (1974). It is not sufficient merely to show that the debtor exercised "business judgment" in order to

---

**2.** 11 U.S.C. § 503(b)(3)(D) provides:
(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
. . . .
(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

. . . .
(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title. . . .

support a claim under section 503(b)(1). *See Club Development,* 27 B.R. at 612. In the present case a mere showing that the equipment in question was purchased as a result of reasonable and prudent business judgment is insufficient. A showing that the equipment was necessary to preserve the estate would also be required. Furthermore, claims under section 503(b)(1)(A) are judged by the actual value received by the estate and not the cost incurred by the creditor. *See In Re California Steel Company,* 24 B.R. 185, 188 (Bankr.N.D.Ill. 1982); *In Re Rhymes, Inc.,* 14 B.R. at 808.

 In addition to being "actual" and "necessary," expenses sought to be reimbursed under section 503(b)(3)(D)[3] must have resulted in a "substantial contribution" to the case. *See In Re Lyons Machinery Co., Inc.,* 28 B.R. 600 (Bankr.E.D. Ark.1983); *In Re Farm Bureau Services, Inc.,* 32 B.R. 69, 71 (Bankr.E.D.Mich.1982). When a creditor incurs expenses primarily to protect its own interest the creditor is not entitled to a priority administrative claim. *Id.; In Re McK, Ltd.,* 14 B.R. 518, 520 (Bankr.D.Colo.1981). In *McK* a secured creditor sought reimbursement for insurance premiums which it paid to protect its collateral. The court found the expenses to be "actual and necessary" because insurance was directly related to the preservation of estate assets. However the court denied the claim because the benefit to the estate was speculative in the absence of a loss and the claimant had acted primarily to protect its own interest.

 While "substantial contribution" does not require a contribution that leads to confirmation of a plan the phrase clearly requires a contribution which provides tangible benefits to the bankruptcy estate and the other unsecured creditors. Thus to the extent that the "substantial contribution" requirement adds anything to the requirements discussed previously, it is to increase the burden of proof which a claimant for administrative expense must bear.

 Applying the principles above to the facts of the present case it is clear that B.I.W. has not met its burden of proof.

**3.** *See* footnote 2.

B.I.W. has not demonstrated that the expense in question was necessary for the reorganization attempt or that the estate actually received a net benefit from the acquisition. Nor has it shown by a preponderance of the evidence that the unsecured creditors will receive a larger net dividend than if the equipment had never been purchased. Without question other estate assets have been depleted in the operation of the equipment. Furthermore, B.I.W. has not shown that the present value of the collateral plus any net receipts resulting from its operation exceed the net value which the estate's assets would have had if the equipment had never been purchased. Even if the purchase of the equipment did result in a somewhat larger dividend for the unsecured creditors, equity would not favor taking that factor into account in this case, since any such incidental benefit would have resulted from B.I.W.'s failure to perfect its security interest. As noted above, an incidental benefit standing alone is not a sufficient basis upon which to grant administrative priority. *See O.P.M. Leasing,* 23 B.R. at 121; *In Re McK,* 14 B.R. at 520. The claim of B.I.W. Credit Union to an administrative priority must be denied.