**In re DeMERT & DOUGHERTY, INC., Debtor.**

**Bankruptcy No. 96 B 00851.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 17, 1998.

---

Forrest L. Ingram, P.C., Chicago, IL, for Movant.

Michael J. Small, Foley & Lardner, Chicago, IL, for Trustee.

Alex D. Moglia, Alex D. Moglia & Associates, Inc., Schaumburg, IL, trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the claim of United Consolidations, Inc. ("United") and on the objection filed by Alex D. Moglia, as Trustee of the Chapter 7 estate of DeMert & Dougherty, Inc. (the "Trustee"). For the reasons set forth herein, the Court hereby sustains the Trustee's objection to United's claim and disallows the claim in full.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## II. FACTS AND BACKGROUND

Many of the facts in this matter are undisputed. On January 11, 1996, DeMert & Dougherty, Inc. (the "Debtor") filed a Chapter 11 petition. Among other things, the Debtor manufactured various products and resold them in the seemingly unrelated automotive and beauty industries. The subject dispute arises from the Debtor's sale of certain of its accounts receivable generated from sales of its beauty supply products. On April 25, 1996, the Debtor, pursuant to 11 U.S.C. § 363(b), sold to Pleasant Green Enterprises, Inc., an Illinois corporation ("Pleasant Green"), at auction, most of its remaining beauty assets. Those assets included real property, machinery and equipment, the beauty and aeropack divisions, certain accounts receivable, intellectual property, li-

censes, trademarks, patents, vehicles, goodwill and the corporate name of DeMert & Dougherty, Inc. *See* Trustee's Exhibit C and United's Exhibit U–1. The Court approved that asset purchase agreement by superseding order dated April 29, 1996. Paragraph 22 of that Order stated in pertinent part:

*The Pleasant Green Sale and the Asset Purchase Agreement, together with the terms and provisions of this Order, shall be binding in all respects upon Pleasant Green,* the Debtor, the Bank, the Debtor's estate, the Debtor's creditors, affected third parties, *all persons asserting claim against or interests in the Debtor's estate or any of the Transferred Assets being transferred, sold and assigned to Pleasant Green, and all of their successors or assigns. . . .*

*Id.* at ¶ 22 (emphasis supplied). From this sale springs the instant dispute over United's contested claim.

The asset purchase agreement between the Debtor and Pleasant Green provided in Sections 2.3 and 2.4 that none of the Debtor's liabilities (related to the sold accounts receivable) were assumed by Pleasant Green. *See* Trustee's Exhibit C and United's Exhibit U–1. Additionally, the asset purchase agreement set forth a bold type detailed general disclaimer of all warranties in Section 2.7 and, by reference, in Section 3.1. *Id.* Further, in Section 3.2 of the asset purchase agreement, Pleasant Green agreed that "it has or shall be deemed to have completed all of its due diligence efforts regarding the Business and the Transferred Assets and/or to have waived further due diligence requirements at or prior to the Sale Hearing." *Id.* at p. 12. Among the assets acquired by Pleasant Green as noted in Section 2.1(i) were "all lists, records and other information pertaining to accounts, personnel and referral sources, all lists and records pertaining to suppliers and customers, and all books and records of every kind (including, without limitation, those evidenced by computer) relating to the Business." *Id.* at p. 6.

On May 20, 1996, Pleasant Green transferred to United all of its rights, title and interest to the assets purchased from the Debtor, and United agreed to indemnify Pleasant Green in respect to the transfer. *See* Trustee's Exhibit H and United's Exhibit U–2. On May 23, 1996, United in turn transferred the assets it had purchased from Pleasant Green to a company now known as DeMert & Dougherty, Inc., a Nevada corporation (the "New DeMert"). *See* Trustee's Exhibit I and United's Exhibit U–3.

Yasar Samarah ("Samarah") was the chairman of the Debtor's board of directors from and after February, 1996. Samarah was somehow connected with Pleasant Green (though not an officer, director or shareholder) prior to the entry of the order approving the sale of the assets from the Debtor to Pleasant Green. In addition, Samarah was an officer and director of United, which is the parent corporation of the New DeMert.

On June 27, 1996, the Debtor's Chapter 11 case was converted to a Chapter 7 case and the Trustee was thereafter appointed. On September 30, 1996, United filed proofs of claim 673 and 674 ("Claim 673" and "Claim 674"). *See* United's Exhibit U–4. For purposes of this matter, only Claim 673 is at issue before the Court because United withdrew Claim 674. United seeks the Court to allow it an administrative priority claim in the sum of $539,484.77. *See* United's Exhibit U–4. United filed Claim 673 pursuant to Federal Rule of Bankruptcy Procedure 3005(a) purportedly on behalf of several entities: Kmart Corporation, Walmart Corporation, Walgreens, Payless Drug Stores, Super Value Stores, Long's Drug, Rite–Aid, Blair Distributors, American Stores Sales, Inc., K & B Drug Stores, and Stop n Shop. *Id.* at Exhibit A. United asserts in Claim 673 that the basis and amount of the asserted administrative expense claim is derived from credits claimed due and owing these entities as former customers and account debtors supposedly owed sums by the Debtor. In essence, United's Claim 673 is based on amounts the Debtor allegedly owed those account debtors who refused to pay or claimed setoffs on the accounts receivable sold to Pleasant Green which were assigned to United who subsequently assigned them to the New DeMert. According to testimony of an agent who factored accounts receivable for the New DeMert, he was only able to collect $80,000–

100,000 of the face aggregate amounts of the approximate 4 million of the subject accounts receivable sold by the Debtor to Pleasant Green.

The Trustee filed an objection to United's Claim 673. The Trustee's objection is based on several grounds: (1) United is not an entity liable with the Debtor to the referenced account debtors, therefore Bankruptcy Rule 3005(a) is not a proper basis under which United can make a claim against the bankruptcy estate; (2) the asset purchase agreement expressly disclaimed any warranty of collectibility concerning the subject accounts receivable sold by the Debtor to Pleasant Green; (3) there was no privity of contract between the Debtor and United because the sale from the Debtor was to Pleasant Green, not United; (4) United subsequently sold the assets to the New DeMert in May, 1996, and thus had no claim to assert against the estate when it filed Claim 673 in September, 1996; and (5) United is bound by the waivers and disclaimers made by Pleasant Green under the asset purchase agreement because the sale was free and clear of any liens and encumbrances.

### III. *APPLICABLE STANDARDS*

 Section 503(b)(1) of the Bankruptcy Code provides that "there shall be allowed administrative expenses, ... including ... the actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. § 503(b)(1). In turn, Section 507(a)(1) of the Bankruptcy Code confers priority status upon "administrative expenses allowed under section 503(b)...." 11 U.S.C. § 507(a)(1). The "burden of proving entitlement to an administrative expense is on the claimant and the standard of proof is a preponderance of the evidence." *Dreamwerks Production Group, Inc. v. Party Masters, Inc. (In re Party Masters, Inc.),* No. 91 B 22949, Adv. No. 92 A 00010, 1992 WL 106259, at *23 (Bankr.N.D.Ill. April 23, 1992). United has the burden of proving each of the elements required for allowance of Claim 673 by a preponderance of the evidence. *Woods v. City Nat'l Bank & Trust Co.,* 312 U.S. 262, 268, 61 S.Ct. 493, 85 L.Ed. 820 (1941); *BOSP Invs. v. Official Comm. of Unsecured Credi-*

tors *(In re Sheridan),* 187 B.R. 611, 613 (N.D.Ill.1995); *In re Dynacircuits, L.P.,* 143 B.R. 174, 176 (Bankr.N.D.Ill.1992); *In re Stoecker,* 128 B.R. 205, 208 (Bankr.N.D.Ill. 1991); *In re Englewood Community Hosp. Corp.,* 117 B.R. 352, 358 (Bankr.N.D.Ill.1990); *Home Savs. Ass'n of Kansas City, F.A. v. Woodstock Assocs. I, Inc. (In re Woodstock Assocs. I, Inc.),* 120 B.R. 436, 451 (Bankr. N.D.Ill.1990); *In re Patch Graphics,* 58 B.R. 743, 745 (Bankr.W.D.Wis.1986). This evidentiary burden never shifts from United, the party seeking allowance of an administrative claim. *In re Molnar Bros.,* 200 B.R. 555, 559 (Bankr.D.N.J.1996). ("Unlike the burden of going forward which may shift to the objecting party, the burden of persuasion always remains with the claimant."); *In re Bellman Farms, Inc.,* 140 B.R. 986, 995 (Bankr.D.S.D. 1991) (same); *In re ICS Cybernetics, Inc.,* 111 B.R. 32, 36–37 (Bankr.N.D.N.Y.1989) (same).

 To be afforded administrative status, United must prove that the expenses claimed were both actual and necessary. *Patch Graphics,* 58 B.R. at 745–746; *Mark IV Properties, Inc. v. Club Dev. & Management Corp. (In re Club Dev. & Management Corp.),* 27 B.R. 610, 612 (9th Cir. BAP 1982); *In re Rhymes, Inc.,* 14 B.R. 807, 808 (Bankr. D.Conn.1981). Expenditures must benefit the estate as a whole and not just the creditor claimant to qualify as actual and necessary expenses. *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.),* 886 F.2d 859, 871 (7th Cir.1989); *Woodstock Assocs.,* 120 B.R. at 451; *Patch Graphics,* 58 B.R. at 746. United also must prove that the expenses for which it seeks administrative priority arose out of a transaction with the Debtor or the Trustee. *In re Jartran, Inc.,* 732 F.2d 584, 586–587 (7th Cir.1984); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950, 954 (1st Cir.1976); *Employee Transfer Corp. v. Grigsby (In re White Motor Corp.),* 831 F.2d 106, 110 (6th Cir.1987); *Dynacircuits,* 143 B.R. at 176.

 A claim is not rendered a postpetition administrative priority claim merely by the fact that the time for payment is triggered by an event that happens after the filing of the petition. *Chiasson v. J. Louis*

*Matherne and Assocs. (In re Oxford Management, Inc.),* 4 F.3d 1329, 1335 n. 7 (5th Cir.1993). Administrative expense claims should be narrowly construed in order to keep administrative expenses at a minimum and thus preserve the estate for the benefit of all creditors. *United Trucking Serv., Inc. v. Trailer Rental Co., Inc. (In re United Trucking Serv., Inc.),* 851 F.2d 159, 164 (6th Cir.1988); *In re Atlantic Container Corp.,* 133 B.R. 980, 992 (Bankr.N.D.Ill.1991); *Stoecker,* 128 B.R. at 208; *Englewood Community Hosp.,* 117 B.R. at 358. An administrative claimant does not meet its burden of proof where the proof of claim is supported by estimates and where accurate documentation relating to the proof of claim is not before the court. *See Atlantic Container,* 133 B.R. at 992. The Court is not obligated to attempt to reconstruct the record of proofs needed by an alleged administrative claimant to whose claim a trustee has objected. *See, e.g., In re Stoecker,* 143 B.R. 118, 130 (Bankr. N.D.Ill.), *aff'd in part, rev'd in part,* 143 B.R. 879 (N.D.Ill.1992), *aff'd in part, vacated in part,* 5 F.3d 1022 (7th Cir.1993).

■■■■ Creditors are presumed to act primarily in their own best interests, and efforts undertaken by a creditor solely to further its own self-interest will not be compensable notwithstanding any incidental benefit to the estate. *Woodstock Assocs.,* 120 B.R. at 451 (quoting *Haskins v. United States (In re Lister),* 846 F.2d 55, 57 (10th Cir.1988)); *see also In re United States Lines, Inc.,* 103 B.R. 427, 430 (Bankr. S.D.N.Y.1989), *aff'd,* No. 90 CIV. 3823, 1991 WL 67464 (S.D.N.Y. April 22, 1991); *Wolf Creek Collieries Co. v. GEX Ky., Inc.,* 127 B.R. 374, 379 (N.D.Ohio 1991); *In re D'Lites of Am., Inc.,* 108 B.R. 352, 356 (Bankr. N.D.Ga.1989); *In re Cuisinarts, Inc.,* 115 B.R. 744, 750 (Bankr.D.Conn.1990); *Patch Graphics,* 58 B.R. at 746; *Hassett v. Revlon, Inc. (In re O.P.M. Leasing Servs., Inc.),* 23 B.R. 104, 121 (Bankr.S.D.N.Y.1982). An incidental benefit standing alone is not a sufficient basis upon which to grant administrative priority. *Patch Graphics,* 58 B.R. at 746; *O.P.M. Leasing,* 23 B.R. at 121. Unsecured creditors should not be forced to bear the burden of expenses incurred by a creditor acting in its own self-interest to further

its own goals. *Wolf Creek,* 127 B.R. at 379 (quoting *In re Hayes,* 20 B.R. 469, 473 (Bankr.W.D.Wis.1982)). Claims under § 503(b)(1)(A) are judged by the actual value received by the estate and not the cost incurred by the creditor. *In re California Steel Co.,* 24 B.R. 185, 188 (Bankr.N.D.Ill. 1982); *Patch Graphics,* 58 B.R. at 746; *Rhymes,* 14 B.R. at 808.

## IV. DISCUSSION

The Court finds that United has failed to demonstrate by a preponderance of the evidence that it is entitled to allowance of an administrative claim. United has not adequately demonstrated that the claimed expenses were both actual and necessary and conferred a benefit to the Debtor's estate for which United should receive a dividend.

■■■■ The Court disagrees with the Trustee's position that United lacks standing to assert a claim against the Debtor's estate. Standing relates to a party's economic interest in the dispute which must exist at the time the action was filed. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); *Banks v. National Collegiate Athletic Ass'n,* 977 F.2d 1081, 1085 (7th Cir.1992), *cert. denied,* 508 U.S. 908, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993). A litigant must have a direct legal interest in the case. *See In re JMP-Newcor Int'l, Inc.,* 225 B.R. 462, 465 (Bankr.N.D.Ill.1998) (quoting *In re Rimsat, Ltd.,* 193 B.R. 499, 502 (Bankr.N.D.Ind. 1996)). United seeks to recover an allowed claim in a specified sum from the Debtor's estate. In that sense, United has shown an economic interest giving it standing. Whether United has standing to assert that it should recover a claim against the Debtor's estate differs from whether United will ultimately prevail on Claim 673 founded on Bankruptcy Rule 3005(a) and filed on behalf of several entities. The Court finds that United does not have a meritorious claim under the Rule. United, as assignee of the Debtor's accounts receivable sold to Pleasant Green, simply does not fit within the class of parties who are afforded protection under Bankruptcy Rule 3005(a).

United filed Claim 673 purportedly on behalf of several entities pursuant to Federal Rule of Bankruptcy Procedure 3005(a) which provides:

> *If a creditor has not filed a proof of claim pursuant to Rule 3002 or 3003(c), an entity that is or may be liable with the debtor to that creditor,* or who has secured that creditor, *may, within 30 days after the expiration of the time for filing claims* prescribed by Rule 3002(c) or 3003(c) whichever is applicable, *execute and file a proof of claim in the name of the creditor,* if known, or if unknown, in the entity's own name. No distribution shall be made on the claim except on satisfactory proof that the original debt will be diminished by the amount of distribution. A proof of claim filed by a creditor pursuant to Rule 3002 or 3003(c) shall supersede the proof of claim filed pursuant to the first sentence of this subdivision.

Fed. R. Bankr.P. 3005(a) (emphasis supplied).

The Trustee argues that United sold all of its rights, title and interest in all of the assets that it acquired from Pleasant Green to the New DeMert on May 23, 1996. Thus, according to the Trustee, United had no legal right under Bankruptcy Rule 3005(a) to assert Claim 673, which purports to arise out of credits or setoffs claimed by account debtors whose accounts receivable were sold by the Debtor to Pleasant Green. The Trustee maintains that from and after May 23, 1996, only the New DeMert could have asserted Claim 673. The Court agrees that United cannot properly assert a claim pursuant to Bankruptcy Rule 3005(a).

As one commentator has noted, Bankruptcy Rule 3005(a):

> permits one who is liable with the debtor to assure that the debtor's estate bears its share of the debt involved. Any entity liable or having property liable for a debt of the debtor may file a claim on behalf of the entity's and the debtor's creditor under this rule. Thus, guarantors, sureties, endorsers, comakers and the like are all covered by the rule, as are other consensually obligated creditors such as general partners and cotenants.

9 L. King, *Collier on Bankruptcy,* ¶ 3005.01 at 3005–2 (15th rev. ed. 1998) (footnote omitted). The Advisory Committee Note to Bankruptcy Rule 3005 also makes it clear that anyone who may be liable on a debt of the debtor, including a surety, guarantor, indorser, or other codebtor, is authorized to file in the name of the creditor of the debtor. The Court declines to expand the scope of Bankruptcy Rule 3005(a) as broadly as United argues. United is not liable with the Debtor for any of the claimed setoffs allegedly asserted by the account debtors who refused to pay on the accounts receivable sold by the Debtor to Pleasant Green. Neither United, nor Pleasant Green for that matter, is a surety, guarantor, indorser or codebtor with or for the Debtor to any of these former customers whose accounts receivable were sold.

United's claim is a thinly veiled attempt to bootstrap possible claims the account debtors had against the Debtor for its benefit through Bankruptcy Rule 3005(a), although it is in no way liable to or for the claimed setoffs or credits. That one or more or all of the account debtors asserted the claimed credits or setoffs against the Debtor and thus refused to pay or do new business with Pleasant Green, United, or the New DeMert when collection efforts were made, does not make United in any way liable with the Debtor for the claimed credits or setoffs.

The Court rejects United's argument that such refusals were tantamount to imposing a lien, encumbrance or other charge on the receivables sold without warranty or recourse by the Debtor to Pleasant Green. There is no true successor liability imposed on Pleasant Green. To accept United's argument would effectively ignore the terms of the asset purchase agreement, change it to a sale with recourse and with a warranty of collectibility of the sold accounts. The Court will not allow United's Claim 673 thereby effectively modifying the terms of the deal made between the Debtor and Pleasant Green.

United urges the Court to adopt a broad interpretation of the language in Bankruptcy Rule 3005(a) "is or may be liable with the

debtor" to include a non-legal liability. The Court will not adopt an absurd or expanded meaning of the word "liable." United is not now nor has it ever been liable for or with the Debtor to any of the parties listed in Claim 673. That United may have agreed to offset or concede some of the credits claimed by the entities listed in Claim 673 in order for them to agree to do future business with United does not equate with the phrase "is or may be liable with the debtor" under Bankruptcy Rule 3005(a). *See, e.g., In re Barefoot Sports, Inc.,* 61 B.R. 546 (Bankr.W.D.Wis. 1986) (principal of corporate debtor held not entitled to priority status held by the IS with respect to subrogated claim). *See also* 11 U.S.C. §§ 502(e)(1), 507(d) and 509(a) (dealing with disallowance of duplicative reimbursement or contribution claims and subrogation rights respectively). Consequently, the Court sustains the Trustee's objection to United's Claim 673 on this basis.

The Court distinguishes the cases cited by United in support of its position. *In re Penniston,* 206 B.R. 948 (Bankr.D.Minn. 1997) is inapposite because it did not involve Bankruptcy Rule 3005(a). Rather, it merely held that a Chapter 13 debtor did not have the right to sell a homestead encumbered with liens when the relief sought was to sell free and clear of such liens without adequately protecting those traditional types of secured liens. In addition, United's reliance on *In re Marcus Hook Dev. Park, Inc.,* 143 B.R. 648 (Bankr.W.D.Pa.1992) is misplaced. The *Marcus* court held that the failure to give proper notice to a creditor whose collateral was sold free and clear of liens under 11 U.S.C. § 363(f) resulted in the reimposition of the lien on the property. Here, the assets were sold to Pleasant Green by the Debtor free and clear of liens and encumbrances with liens to attach to the sale proceeds. That the accounts receivable debtors asserted credits and offsets does not equate with a consensual lien or legal encumbrance upon the sold assets.

The Trustee contends that United's reliance on the asset purchase agreement to assert Claim 673 against the Debtor's estate is misplaced. The Trustee argues that United did not have any agreement with the Debtor nor was it a party to any of the agreements between the Debtor and Pleasant Green. The Trustee maintains that United did not have privity of contract with the Debtor. United came to own the assets, including the accounts receivable and goodwill, by purchasing them from Pleasant Green. *See* Trustee's Exhibit H. United, as a party not in privity with the Debtor, according to the Trustee, cannot assert a claim for breach of contract against the Debtor or as a codebtor with the Debtor.

Generally, only a party to a contract or one in privity with a party may sue to enforce the contract. *Stamp v. Inamed Corp.,* 777 F.Supp. 623, 625 (N.D.Ill.1991) (applying Illinois law). An exception to this rule is if the party is a direct beneficiary as opposed to an incidental beneficiary. *Id.* United was not a party to any agreements between the Debtor and Pleasant Green and United did not have any agreement or contract with the Debtor. Thus, the Court agrees with the Trustee's argument that United did not have privity of contract with the Debtor. However, United is not suing the Debtor for breach of contract. Rather, as an intermediate assignee of the subject accounts receivable it is asserting a claim against the Debtor's estate, pursuant to Bankruptcy Rule 3005(a), on behalf of several entities who have not filed claims on their own behalf. Hence, the Trustee's argument about privity of contract is inapposite. The Court agrees, however, with the Trustee's assertion that any claim against the estate for purported defenses concerning the sold accounts receivable really belongs to Pleasant Green and not to United or the New DeMert. The fact that Pleasant Green assigned its interest in the assets to United days after purchasing the assets without recourse from the Debtor and was granted broad indemnity from United, undercuts United's argument that the Debtor owed it or anyone else some duty under the asset purchase agreement between the Debtor and Pleasant Green. This conclusion is buttressed by the provisions of the asset purchase agreement which disclaimed all warranties as to the assets sold and contained the due diligence waivers by Pleasant Green, and place United in no better position than Pleasant Green.

■ The sales agreement between Pleasant Green and the Debtor did not contain any implied warranties of collectibility for accounts receivable. There are no implied warranties of collectibility for sold accounts receivable. *See Klimate–Pruf Paint & Varnish Co. v. Klein Corp.,* 1 N.C.App. 431, 161 S.E.2d 747 (N.C.App.1968). The terms of the asset purchase agreement limited Pleasant Green's rights against the Debtor. By the subsequent assignment, Pleasant Green passed on those rights to United, but could not transfer anything more than that acquired.

■ Section 2.1 of the asset purchase agreement between Pleasant Green and the Debtor provided in relevant part that "[the Debtor] shall sell, transfer, convey, quitclaim, assign without recourse, representation or warranty of any kind and deliver to the extent same are capable of transfer by the [Debtor] ... to [Pleasant Green], free and clear of any and all Liens...." *See* Trustee's Exhibit C and United's Exhibit U–1 at p. 4. Under Section 1.1 of the asset purchase agreement, lien was defined as "any mortgage, pledge, security interest, conditional sale or other title retention agreement, encumbrance, lien, easement, option or charge of any kind." *Id.* at p. 3.

The stated refusals of Kmart, Walmart, Walgreens and other accounts receivable debtors to pay on the assigned accounts receivable until certain claimed credits or offsets were credited to them does not make any of the sold accounts receivable subject to any mortgage, pledge, security interest or other "lien" within the definition of the agreement. Indeed Samarah conceded on cross-examination that United has no legal obligation to pay the various setoffs or credits claimed by the non-paying account debtors whose receivables were sold by the Debtor to Pleasant Green, which he stated was used as the entity to complete the purchase of the assets acquired from the Debtor. Samarah's misunderstanding that the asset purchase agreement was to somehow afford a credit against the purchase price paid to the extent the sold accounts receivables did not pay is unavailing. Moreover, there is no evidence that United took assignments of the claims asserted against the Debtor by the accounts receivable debtors contending they were owed credits from the Debtor or had setoffs against the Debtor. Furthermore, because Samarah was both a director of the Debtor and of United, United is imputed with his limited knowledge under *In re Ostrom–Martin, Inc.,* 202 B.R. 267, 274 (Bankr. C.D.Ill.1996). That the account debtors themselves apparently did not file claims against the Debtor or its estate, does not ipso facto entitle United to recover under Bankruptcy Rule 3005(a).

Additionally, the superseding sale order expressly provided in paragraph 18 that "[a]ny and all asserted liens, claims, interests and encumbrances shall attach to the proceeds of the Pleasant Green Sale." *See* Trustee's Exhibit C and United's Exhibit U–1 at p. 6. Thus, if the various account debtors had claims for credits or setoffs against the Debtor, it was incumbent upon them to file their respective proofs of claim against the estate, not United on their behalf under Bankruptcy Rule 3005(a).

The Debtor's assets were assigned to United by Pleasant Green days after the sale agreement between the Debtor and Pleasant Green. That some of the Debtor's trade customers may have had credits due and owing them does not constitute liens or encumbrances against the assets. United argues that these credits or offsets in fact constitute liens and encumbrances against the assets in violation of the asset purchase agreement between the Debtor and Pleasant Green. The Court disagrees with United's contention that credits due the Debtor's trade creditors constitute liens and encumbrances against the assets sold by the Debtor to Pleasant Green. No evidence was presented by United to demonstrate that any of these trade creditors listed in Claim 673 had recorded liens or other perfected forms of security interest as to the Debtor's assets.

In addition, Section 2.3 of the sale agreement provided that "[Pleasant Green] shall assume ... the obligations, commitments and liabilities of [the Debtor] under the Assigned Contracts...." *See* Trustee's Exhibit C and United's Exhibit U–1 at p. 7. Further, Section 2.4 excluded certain liabilities

and provided that "[Pleasant Green] shall not assume, and shall have no liability for, any debts, liabilities, obligations, taxes, contract or commitments (collectively, the 'Excluded Liabilities') arising in connection with the Business not expressly assumed by [Pleasant Green] pursuant to the Approval Order or Sections 2.3 or 11.2." *Id.* at pp. 7–8.

Most important, Section 2.7 of the asset purchase agreement between the Debtor and Pleasant Green prominently provided for the disclaimer of warranties and was in all capital letters. This section provided in relevant part:

> EXCEPT TO THE EXTENT EXPRESSLY SET FORTH IN SECTION 3.1, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT AND BY ANY ONE OR MORE OF THE OTHER ACQUISITION DOCUMENTS ARE AND SHALL BE WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, WHETHER EXPRESS OR IMPLIED, BY, OR RECOURSE AGAINST [THE DEBTOR].... [THE DEBTOR] HEREBY DISCLAIMS ANY REPRESENTATION OR WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE OR CONDITION OF TITLE OR THE TRANSFERRED ASSETS OR ANY OTHER REPRESENTATION OR WARRANTY OF ANY KIND AND ... [PLEASANT GREEN] BY CLOSING THE TRANSACTION, ACKNOWLEDGES AND AGREES THAT IT PURCHASES THE ASSETS ON THE FOREGOING BASIS....

*Id.* at p. 9. This section further demonstrates that United took the assets from Pleasant Green without any implied warranties made by the Debtor. Thus, United's argument in this respect must fail and the Trustee's objection thereto is sustained. If Pleasant Green was intended to be the mere nominee or shill for United, United should have negotiated other and more favorable sale terms for its benefit to provide it with some recourse against the Debtor or its estate if the sold accounts receivable were not paid at their face value. That not done, thus properly precludes United's recovery here. The Court declines United's suggestion to use 11 U.S.C. § 105(a) to rewrite the terms of the asset purchase agreement.

United has asserted in its proposed conclusions of law that it is entitled to relief on some equitable basis under Bankruptcy Rule 3005(a). The Trustee asserts that under the doctrine of unclean hands, United may not succeed on an equitable claim. United's equitable arguments are unsupported with any persuasive authority to show that the Rule covers or was intended to protect it. The Trustee has failed to support his position with any facts, only citing to this Court's decision in *In re Midway Airlines, Inc.,* 180 B.R. 851 (Bankr.N.D.Ill.1995) without expanding upon precisely how United comes before the Court with unclean hands. The failure of both United and the Trustee to support some of their points results in the forfeiture of the points. *See LINC Finance Corp. v. Onwuteaka,* 129 F.3d 917, 921 (7th Cir.1997); *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990). Consequently, the Court will not further address their unsupported arguments.

## V. *CONCLUSION*

For the foregoing reasons, the Court hereby sustains the Trustee's objection to United's Claim 673. United's Claim 673 is disallowed in full.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.